# FRED E. DAVIS, Respondent, v. HENRY JOERKE, Gottfried Heinrich, and Emmanuel Schock, Appellants.

## (181 N. W. 68.)

**Evidence — evidence admissible to determine capacity in which uncertain contract was signed.**

1. Where the form of a simple written contract for the payment of money is such that it may reasonably be said to be uncertain as to the capacity in which the individuals signing it intended to be bound, the name of their principal being disclosed in the body of the contract, evidence of the transaction is admissible for the purpose of determining whether or not it is the individual obligation of the persons signing or the obligation of the disclosed principal.

**Corporations — where uncertain whether parties acted as principals or as agents, direction of verdict for plaintiff held error.**

2. Where there is an issue as to the capacity in which the defendants contracted,—that is, as to whether they contracted as principals or as agents for a disclosed principal; where the written contract is ambiguous, and there is conflicting testimony as to the prior negotiations and agreements relating to the capacity in which it was intended the defendants should be bound, it was error for the trial court to direct a verdict in favor of the plaintiff.

**Corporations — when corporation not liable for promoters' contract stated.**

3. Where individuals interested in the project of forming a corporation entered into a contract with a stock subscription solicitor to pay him a commission for work done, the corporation, when formed, in the absence of assumption in some manner, is not liable on the contract, and neither are the individuals liable if the solicitor relied exclusively upon the corporation to be formed.

**Corporations — directors of proposed corporation may be liable to promoter, if organization abandoned.**

4. If directors in a proposed corporation purport to bind it, in advance of its organization, for legitimate promotion expenses, and undertake to answer for the assumption of the obligation by the corporation, they may be held

NOTE.—The rule is well established, in the absence of ratification or adoption, or charter or statutory provision imposing liability, that a corporation is not bound by contracts made by its promoters before its creation, as will be seen by an examination of the notes in 26 L.R.A. 544, and 50 L.R.A. (N.S.) 979, on liability of corporation on contracts of promoters.

On personal liability of one who signs a contract by adding words indicating representative capacity, to his signature, see note in 42 L.R.A. (N.S.) 1.

personally liable if they abandon the plan of organization and prevent the assumption of the obligation by the corporation.

Opinion filed December 16, 1920.

Appeal from the District Court of McIntosh County, Honorable *F. J. Graham*, Judge.

Reversed and remanded.

Statement of facts by BIRDZELL, J.   This is an action upon a contract to pay money as follows:

Agreement.

Ashley, N. D. Oct. 14, 1919.

We the undersigned president and members of the board of directors of the Farmers' State Bank, Ashley, N. D., do hereby promise and agree to pay F. M. Mitchell of Bismarck, N. D., the sum of $1,610 for value received, without interest at the time the secretary of state of North Dakota issues a charter to the above-named bank.

Henry Joerke, President.
Gottfried Heinrich, Director.
Emmanuel Schock, Director.

Witnesses:
    W. L. Johnson,
    Fred E. Davis.

The contract was assigned by Mitchell to the plaintiff.   At the conclusion of the trial, a verdict was directed in favor of the plaintiff for the full amount stipulated to be paid, upon which judgment was entered.   The appeal is from the judgment and from an order denying the defendants' motion for a new trial.

The facts are as follows:   During the late summer or early fall 1919, F. M. Mitchell interested a number of persons in the vicinity of Ashley, North Dakota, in a project of starting a new bank.   He spent about a month in the locality, and personally solicited various individuals to purchase stock.   In this work he was assisted somewhat by some of the defendants in the action.   Where successful in his solicitations, he took notes for the amount subscribed.   The plan was to organize a bank of $20,000 capital to be known as the Farmers' State Bank.   The stock

was to be sold at 125 so that the bank might start with a surplus and un-
divided profits account of $3,000, and it is claimed that $10 per share
was to be allowed Mitchell as compensation for his work and organiza-
tion expenses.    Mitchell had an arrangement with the plaintiff, Davis,
whereby part of the organization work was to be done by the latter.    A
meeting of the subscribers was held in Ashley on October 11, 1919, at
which the defendants and two others were elected directors of the pro-
posed bank.    There is testimony to the effect that at the time the organi-
zation meeting was held some 161 shares had been subscribed, and that
an arrangement was made whereby the remaining shares would be al-
lotted to those who had subscribed previously, with the understanding,
however, that nothing should be allowed to Mitchell upon such shares
for organization expenses.    At the time of this meeting the subscribers'
notes were in the possession of Mitchell.    On October 14th, Davis and
Mitchell called the defendants together apparently for the purpose of
making a settlement of Mitchell's claim for commissions or promotion
expenses.    They went to the Ashley State Bank, where Davis dictated,
and the three defendants signed, the contract upon which this suit is
brought.    A receipt showing the change in the possession of the securities
amounting to $25,000, held for the stock of the new bank, was also
drawn up and signed by the Ashley State Bank, by Johnson, its cashier.
This receipt was also assigned by Mitchell to the plaintiff.    The receipt,
omitting the list of notes and securities reads as follows:

Ashley, N. D., Oct. 14, 1919.

Received of F. M. Mitchell, Bismarck, N. D., the following
described notes to be held in escrow until such time as a charter has
been issued to the Farmers' State Bank, Ashley, N. D., at which time
the undersigned bank agrees to pay to said F. M. Mitchell the sum of
$1,610 after first deducting the sum of $50 which is to be paid to Gott.
Heinrich, and the further sum of $40 which is to be paid to E. M.
Schock.  .  .  .

Ashley State Bank, Ashley, N. D.
By W. L. Johnson,
Cashier.

For a valuable consideration I hereby assign and transfer to Fred E.
Davis the within instrument and the instruments thereto attached.

F. M. Mitchell.

Articles of incorporation of the Farmers' State Bank were executed by the defendants and two others on October 13, 1919. These were accompanied by a certificate of the defendant Joerke as president of the Farmers' State Bank that the capital stock of $20,000 was paid up. The articles were filed with the secretary of state on October 16, 1919, and the charter was delivered on the same day to the state examiner, but the preliminary examination required by law was never made and the charter was never delivered by the examiner to the Farmers' State Bank. On November 13th a special meeting of the board of directors was held, at which all of the defendants were present, and it was resolved to employ counsel for the purpose of bringing or defending a suit founded on the claim in question; also to notify the Ashley State Bank not to deliver to Mitchell or his assigns the subscription notes, "as this bank has repudiated the claim of said F. M. Mitchell and his assigns against the bank for the said claim against the bank for the sale of said stock."

At a meeting of the directors on December 2d, a resolution was carried to the effect that the president be given authority to reject any and all applications for stock in the bank, and that the president and cashier be given authority to meet the directors of the First National Bank of Ashley to bargain for the purchase of that bank, and be authorized to close the deal for such purchase at not more than $55,000. At later meetings of the directors and stockholders, arrangements were made to increase the subscriptions to the stock of the Farmers' State Bank in order to purchase the First National Bank. At the stockholders' meeting a motion was unanimously carried that meetings held by and under the name of the Farmers' State Bank be discontinued, and that the meetings and transactions be by virtue of the stockholders of the First National Bank of Ashley; and it was declared that the organization would be known thereafter as the First National Bank of Ashley. The notes were practically all paid and the proceeds deposited in the Ashley State Bank in the name of Henry Joerke, agent, and in his testimony he states that he was agent for the Farmers' State Bank.

*J. H. Wishek* and *W. S. Lauder,* for appellants.

Here was on the face of the note itself, in view of the way it was drawn and signed, ample to put anyone upon inquiry as to the charac-

ter in which the defendants signed. Chatham Nat. Bank v. Gardner, 31 Pa. Super. Ct. 135; Crandall v. Rollins (N. Y.) 82 N. Y. Supp. 317; Wilmoth v. Hensel, 151 Pa. 200, 31 Am. St. Rep. 738.

Where one signs as agent of another, the prima facie presumption is that the words are merely *descriptio personæ,* and therefore that the one so signing is personally bound; yet it may be shown in an action between the original parties that it was not so intended. 3 R. C. L. p. 1095.

Where an offer of proof is made and overruled it will be presumed that the party making the offer could, if permitted, have proved the facts as set forth in the offer. Larson v. Russell (N. D.) 176 N. W. 1013; Dickinson v. Burke, 8 N. D. 118.

*Cameron & Wattam,* for respondents.

One who executed a promissory note or other instrument in the name of another, assuming to be his agent but having in fact no authority for that purpose, is himself bound as principal. Palmer v. Stephan, 1 Denio, 471; Dusenbury v. Ellis, 3 Johns. Cas. 70, 2 Am. Dec. 144; Rawlings v. Robson, 70 Ga. 595; Byars v. Dorres, 20 Mo. 284; Weare v. Grove, 44 N. H. 196; Roberts v. Button, 14 Vt. 195.

Where a note recited, "We, as trustees" of a named church "for and in behalf of the church, promise to pay," and was signed by persons designated as the trustees of such church, and the note failed to bind the church because of absence of authority to execute it, the trustees signing are personally held on the note. Dennison v. Austin, 15 Wis. 335; Brunswick-Balke Collender Co. v. Boutell, 45 Minn. 21.

It is not competent for the signer of a note not made in the name of his principal to show that anyone other than himself was liable thereon. National German American Bank v. Lang, 2 N. D. 66.

Parol evidence is not admissible to vary the terms of a written agreement. Johnson v. Kindred State Bank, 12 N. D. 336; Harney v. Wirtz, 30 N. D. 292; Reitsch v. McCarty, 35 N. D. 555.

BIRDZELL, J. (after stating the facts). The principal error complained of is the direction of the verdict in favor of the plaintiff. It is contended that the contract in question is ambiguous in that it does not clearly appear whether the defendants who are sued individually, undertook an individual liability or whether they undertook to bind

the corporation of which they were respectively president and directors. At the trial considerable evidence was admitted going to establish the understanding of the parties in this respect. It was the contention of both Davis and Mitchell, who were present at the meeting when the instrument was drafted and signed, that they were interested only in obtaining the signatures of the defendants rather than the whole board of directors, because they knew the defendants to be personally responsible. They testified that they stated this in substance to the parties at the time the contract was signed. On the other hand, the testimony offered by the defendants is that a majority of the directors were requested to sign so as to bind the corporation by their action in so far as the corporation could be bound at the time; that they expressly refused to become personally liable for the obligation; that all parties understood that the corporation had not yet come into existence; and that the only liability intended to be evidenced by the contract was whatever liability the corporation would later assume. After admitting this testimony the trial court apparently came to the conclusion that it was inadmissible; that the contract on its face was not ambiguous and bound the defendants personally; and for that reason the verdict was directed. We are of the opinion, however, that the instrument is ambiguous in that it does not clearly appear whether the defendants undertook to bind the corporation or whether they contracted personally, using the description of president and director as mere words *descriptio personæ*. The authorities dealing with this question are in almost hopeless confusion, and we need not discuss them at length. On one hand there are those which emphasize the parol-evidence rule to the point of attempting to extract from every written instrument the intention of the parties without aid from extrinsic sources. In the extreme applications of this rule by such authorities, contracts are construed as binding the individuals in instances where it is quite apparent that the actual intention of the parties was to bind a corporate principal. This, because the individuals had not adopted a form of signature showing beyond question the intent to sign the corporate name. On the other hand, there are those authorities which relax the parol evidence rule upon the slightest showing of uncertainty in the capacity in which those whose names appear are intended to be bound. In view of these conflicting authorities, par-

ticularly with respect to negotiable instruments, a provision was inserted in the Negotiable Instruments Law in the hope of measurably reconciling the conflict and producing more uniformity in the decisions. The section reads:

"Where the instrument contains or a person adds to his signature words indicating that he signs for or on behalf of a principal, or in a representative capacity, he is not liable on the instrument if he was duly authorized; but the mere addition of words describing him as an agent, or as filling a representative character, without disclosing his principal, does not exempt him from personal liability." Under this statute the *form of the signature* is not necessarily controlling, but the *contents* of the instrument are to be examined to ascertain whether the agent appears to sign for or on behalf of a principal, and if he has used words describing himself as an agent without disclosing the principal he is not exempt from personal liability; but if he does disclose the principal, as in the instant case, he is not liable provided it was the intention to bind the principal. If there can fairly and reasonably be said to be uncertainty regarding this intention it is open to inquiry *aliunde* to render it certain, especially between immediate parties. The parol-evidence rule has received even a more rigid construction in the case of negotiable instruments than as applied to contracts generally. As this statute evidences a tendency to relax the rule somewhat with regard to negotiable instruments, there is all the more reason why it should not be rigidly applied to ordinary contracts. This is the tendency of the recent authorities. 3 R. C. L. p. 1095, says:

"It is better in these cases, however, to hold that the signature is ambiguous, and hence subject to explanation by extrinsic evidence; and this is the modern view. According to sounder doctrine while, where one signs as an agent of another, the prima facie presumption is that the words are merely *descriptio personæ*, and therefore that the one so signing is personally bound; yet it may be shown in an action between the original parties that it was not so intended, and that, in fact, the real intention was to bind the principal whose name was disclosed in the signature of his agent, or who was well known by the payee to be the real party to be bound." Megowan v. Peterson, 173 N. Y. 1, 65 N. E. 738. See also note and cases cited therein, 42 L.R.A.(N.S.) 6.

We are of the opinion that there is sufficient uncertainty manifested

on the face of the contract in question to admit evidence of the transaction, and that the conflicting testimony relating to the capacity in which the defendants' contracted formed a question of fact, which should have been submitted to the jury.

In view of the fact that there must be a new trial of the action, another question is presented upon the record that requires consideration. Upon such conflicting evidence as appeared upon the former trial, the jury will be called upon to determine what the true contract of the parties was, and even if it should be determined that the defendants contracted in a representative capacity, the further question would arise as to whether or not they might still be personally liable, in view of the subsequent transactions. As appears in the statement of facts above, those purporting to act for the bank repudiated this obligation as the obligation of the bank, and the stockholders have apparently determined not to complete the organization of the Farmers' State Bank, but to continue their organization as the First National Bank of Ashley. The question as to whether or not the defendants rendered themselves personally liable to the plaintiff by reason of their participation in this action of the stockholders, is one that is not free of difficulty.

It is elementary that a corporation is not liable upon contracts entered into by its promoters. Before the corporation comes into existence, it can have no representative, and no one is capable of acting for it. Those interested in promoting it may nevertheless contemplate the ultimate payment by the corporation of the legitimate promotion expenses. But the corporation does not become liable for such expenses, in the absence of a subsequent undertaking in some form. In the instant case the record is in an uncertain state as to the capacity in which Mitchell was originally employed, if he was employed, to undertake the work he did. It does not appear, however, that he was employed by these defendants acting together. Neither does it appear as to whether or not he was acting as the agent of each individual stockholder for the purpose of bringing about the organization of the corporation. Possibly he had an understanding with the individual stockholders for his commission, and that it was included in the subscription notes. If such were the arrangement these defendants, acting with knowledge thereof, in attempting to put their own notes be-

yond the reach of Mitchell and abandoning the original plan of incorporation, would each be severably liable to him or his assignee for the amount so included in the notes given by them. The record leaves it equally uncertain as to whether there was any undertaking, express or implied, that these defendants would co-operate to secure the completion of the organization. These are questions of fact upon which the ultimate liability of the defendants in this action may depend. They must be determined by the jury from all the evidence bearing upon the transaction. The jury, in short, must find what the actual contract relations were.

While some of the evidence has either a direct or circumstantial bearing upon some of these questions, we are satisfied that it cannot be said that they must be resolved one way or the other as a matter of law; for reasonable inferences either way may be drawn from some of the testimony. If, for instance, the jury should believe the version of the transaction as testified to by the defendants, they might also reasonably infer that Mitchell was content to take the risk of the ultimate organization of the corporation; knowing, as he must have known, the desire of the stockholders, whom he had personally solicited. In this event, it could not be said that there was any undertaking on the part of the defendants to secure the organization of the corporation, nor would they be precluded from exercising their judgment, in conjunction with the other stockholders, as to the desirability of completing the organization. Queen City Furniture & Carpet Co. v. Crawford, 127 Mo. 356, 30 S. W. 163; Landman v. Entwistle, 21 L. J. Exch. N. S. 208, 7 Exch. 632, 155 Eng. Reprint, 1101; Fletcher, Cyc. Corp. § 158. On the other hand, if these parties undertook to answer for the assumption of this obligation by the corporation and then joined in a plan to frustrate its assumption, they have, of course, repudiated their obligation, and are liable. Roberts Mfg. Co. v. Schlick, 62 Minn. 332, 64 N. W. 826; 14 C. J. § 313.

It follows from what has been said that the judgment and order appealed from must be reversed and the cause remanded for a new trial. It is so ordered.

CHRISTIANSON, Ch. J., and BRONSON, and GRACE, JJ., concur.

ROBINSON, J. (concurring specially.)   The plaintiff sues on a document as follows:

                                        Ashley, N. D., Oct. 14, 1919.
We, the undersigned, president and members of the board of directors of the Farmers' State Bank, Ashley, N. D., do hereby promise and agree to pay F. M. Mitchell of Bismarck, N. D., the sum of $1,610 for value received, without interest at the time the secretary of state of North Dakota issues a charter to the above-named bank.

                                  Henry Joerke, President.
                                  Gottfried Heinrich, Director.
                                  Emmanuel Schock, Director.
Witnesses:
       E. E. Johnson,
       Fred E. Davis.

On the back of the document it is written:

I hereby assign and transfer to Fred E. Davis all my rights, title, and interest in and to the within instrument.

                                  F. M. Mitchell.

Defendants, by answer, aver that the document was made without any consideration.   The court directed a verdict for the plaintiff, and appellants aver that there is no evidence to sustain the verdict.

As it appears, Mr. Mitchell was a promoter, and to secure the organization of a bank at Ashley, North Dakota, he did induce several persons to subscribe for bank stock to the amount of $16,100, agreeing to pay for the same $125 a share, and that each subscription included 10 per cent for his promotion.   He did preside at an organization meeting held by the stock subscribers, and he then delivered the subscription papers to defendant Joerke, who had been elected president of the bank.   Davis was present, dictated the document in question and the assignment to himself.   There is no claim that either of the defendants employed Mr. Mitchell or Davis to secure the subscriptions or to promote the organization of the bank.   No services were rendered for or at the request of either of the defendants.   The subscription papers

were not payable to Joerke or to either of the defendants. The papers were turned over to the Ashley State Bank to be held in escrow until the issue of a charter to the Farmers' State Bank of Ashley. The bank gave a receipt for the same to F. M. Mitchell, and at the foot of the receipt there is written an assignment to Fred E. Davis. On the argument of the case counsel for plaintiff was requested to point out evidence of any consideration for the promise to pay $1,610. They failed to do so. An examination of the record does not disclose any consideration for the promise. The defendants did not hire either Mitchell or Davis to perform any services, either for themselves or the bank, or for any person. When defendants signed the paper they were under no legal obligation to pay anything to Mitchell or to Davis. Hence the promise to pay is void for want of consideration. Furthermore, it appears that in obtaining the promise to pay and in obtaining the subscriptions, Mitchell and Davis were dealing with illiterate Germans, who did not understand the promotion game or the English language. Otherwise, it is hard to conceive how any one of the subscribers would have promised to pay 10 per cent for inducing him to subscribe for stock when he was perfectly free to subscribe without paying any commission. As the pleadings and the proof wholly fail to show any cause of action against the defendants, the judgment should be reversed and new trial granted.