[Civ. No. 4699.   Fourth Dist.   Mar. 10, 1955.]

PACIFIC FINANCE CORPORATION (a Corporation), Respondent, v. R. M. CRANE et al., Appellants.

Harold A. McCabe, G. V. Weikert and Ernest R. Utley for Appellants.

Crowe, Mitchell & Hurlbutt, Hugh M. Foster, Jr., Ivan C. Tagert and Mansfield A. Mills for Respondent.

BARNARD, P. J.—This is an action to foreclose a trust deed, a chattel mortgage, and a pledge agreement given to secure a note executed by the individual defendants.

On June 13, 1946, the plaintiff loaned $195,000 to the nine individual defendants for the purpose of enabling them to purchase 1,950 acres of land. Two checks totalling that amount were dated and delivered on that day, both being payable to and endorsed by all of the individual defendants. On the same day, these individual defendants executed a note jointly and severally promising to pay to plaintiff $201,000 "with interest from date hereof on the unpaid principal at the rate of seven per cent (7%) per annum, payable monthly; if the principal payments run past maturity the interest on such delinquent amounts of principal shall be at the rate of ten per cent (10 %) per annum; principal payable in installments as follows:

"$75,000.00 or more on January 15, 1947,

"$50,000.00 or more on May 1, 1947, and a final installment on January 15, 1948 in the amount of the then remaining unpaid principal balance and interest." Other provisions of the note are not in controversy, and it is admitted that the $201,-

000 included a bonus or discount agreed upon by the parties, which bonus must be considered as interest.

On June 13, 1946, these individual defendants also signed and delivered to the plaintiff a letter reciting their understanding of this transaction. This letter states that "The following constitutes our understanding and agreement in respect to the $195,000.00 loan made by your corporation to us this day for the purpose of purchasing from Capital Corporation 1950 acres known as Sentinel Butte Ranch together with equipment located thereon." This is followed by three numbered paragraphs. The first states "We have executed our note in your favor in the sum of $201,000.00 which represents the principal amount of the loan of $195,000.00, plus your discount." The second states "It is understood that our note is to be secured by a deed of trust and chattel mortgage . . . covering the aforementioned property, excepting the crops thereon, and subject only to a first lien on the real estate and equipment securing an obligation in favor of the seller in the amount of $300,000.00 . . .". The third paragraph states that "It is our intention to form a corporation to be known as Sentinel Butte Corporation, for the purpose of taking over and operating said property." After a further provision, not material here, the third paragraph concludes: "It is understood that the transfer of said property to the proposed corporation shall in no manner relieve us from our liability to you under said note." Immediately following the signatures of the individual defendants the plaintiff signed a confirming statement which reads: "We confirm the above as setting forth our understanding as to the matters herein set forth."

Title to this ranch was conveyed from the Capital Company to two of the individual defendants, L. A. Evans and his wife, by a deed dated June 18, 1946, which was recorded on July 5, 1946. A trust deed and a chattel mortgage covering this ranch and certain equipment and securing this note, were executed by Evans and his wife and delivered to the plaintiff. They were both dated June 13, 1946, and were also recorded on July 5, 1946. L. A. Evans and his wife then conveyed this land to Sentinel Butte Corporation, which had been organized by the individaul defendants, by a deed dated August 9, 1946 and recorded August 17, 1946.

On July 2, 1946, the plaintiff wrote a letter addressed to Sentinel Butte Corporation, "Attention: R. M. Crane," who was one of the individual defendants, which reads:

"Gentlemen:

"This will confirm our conversation of several days ago relative to the adjustment of your indebtedness to this corporation.

"You will recall that during the negotiations leading up to the consummation of the subject loan you were advised that the note would be written to provide for a yield to maturity not to exceed 10% per annum. Inadvertently the note was so drawn as to exceed this limitation. Accordingly, in order to correct this mistake and to bring the rate under 10% per annum, we have by endorsement as of June 13, 1946, reduced the amount of the indebtedness by $625, applicable to the final installment of $76,000, which is due, pursuant to the terms of the note, on January 15, 1948.

"We shall appreciate the signers of the note indicating their understanding and agreement to the adjustment that has been made, as above mentioned, and their acceptance of the method employed by signing as indicated on the carbon copy of this letter. Please return the copy when properly signed."

A copy of this letter marked "Approved" was signed by each of the individual defendants and returned to the plaintiff. This reduction of $625 was credited by the plaintiff and treated by it as reducing by that amount the final installment called for by the note. The first installment of $75,000 due on January 15, 1947, was partly paid on January 16, 1947, and the remainder on February 14, 1947. The second installment of $50,000 was not paid on May 1, 1947, when due, and no part thereof was paid for more than two years after said due date. The final installment, as corrected, of $75,375 was not paid on January 15, 1948, when due, and no part thereof had been paid when this action went to trial.

A quarrel developed among the individual defendants as a result of the failure to meet the payments required by the various liens on this ranch, and one of them brought a suit which was dismissed when the directors of Sentinel Butte Corporation agreed to sell the assets of said corporation in order to satisfy these obligations. In April, 1948, a program of liquidation contemplating the sale of the Sentinel Butte Ranch properties in small parcels was undertaken for the purpose of applying the proceeds on these various obligations. A real estate agent was given authority to sell certain parcels, as listed in the agreement, at designated prices. In order to facilitate such sales a mutual water company was formed in order to furnish water to the purchasers. The plaintiff was

given certain shares in this mutual water company to hold as a pledge, in lieu of its original lien on these water facilities, this being the pledge involved in this action. This was not an additional security but merely a substitution of securities. While the plaintiff was not a party to the program of liquidation or agreement therefor, it consented thereto. A number of parcels were sold at their market value, and the plaintiff executed partial releases of its liens to enable such sales to be made. From the sales so made the indebtedness of $300,000 to the Capital Company was fully paid, and certain amounts were paid to the plaintiff at various times to apply on the indebtedness here in question.

This action was filed on November 7, 1949, naming the signers of the note and the Sentinel Butte Corporation as defendants. The appointment of a receiver was also sought. On November 22, 1949, pursuant to its voluntary petition, the Sentinel Butte Corporation was adjudicated a bankrupt. By order of the federal court the plaintiff was precluded from procuring the appointment of a receiver. The trustee in bankruptcy took possession of the assets, and was authorized by the federal court to represent the bankrupt estate in this action. The trial of the action began on March 13, 1951. The court's opinion and order for judgment was not filed until May 12, 1952. Findings of fact and conclusions of law were later filed, and judgment was not entered until September 21, 1953. On August 13, 1952, before judgment was entered, the trustee in bankruptcy sold the remaining assets for $33,-490.20, which amount was paid to the plaintiff and applied partly to the payment of accrued interest and partly to the principal of this debt.

The complaint in this action alleged the general facts above stated, set forth the instruments and letters above referred to, and alleged that no part of the principal sum of this note, as adjusted by the agreement of July 2, 1946, had been paid except for certain amounts paid on various dates between January 16, 1947, and July 28, 1949; that there was now due on said note the principal sum of $92,195.40; that all interest on the note had been paid to July 28, 1949; and that nothing had been paid upon principal or interest since July 28, 1949. It was also alleged that certain sums had been paid by the plaintiff, covered by the trust deed, for taxes and expenses. The prayer was for judgment as against the individual defendants for $92,195.40, with interest at 10 per cent from July 28, 1949; for the expenses incurred and for attorneys'

fees; for a foreclosure and sale of the remaining assets as against all defendants; and for judgment as against the individual defendants for any deficiency. Briefly stated, the answers admitted the making of the loan and the execution of the various instruments in connection therewith and alleged, by way of defense and counterclaims, (1) that the loan was usurious and required the defendants to pay interest in excess of 10 per cent per annum, and they were entitled to have all interest payments applied on the principal of the debt; (2) that the original maturity date provided in the note had been extended and strict performance thereof waived by the plaintiff so that "the note was not in legal default"; (3) that the individual defendants were the promoters of Sentinel Butte Corporation and upon its incorporation Sentinel Butte became the sole debtor; and (4) that between April 28, 1948, and July 28, 1949, the plaintiff controlled and supervised the liquidation program; that plaintiff thus became a mortgagee in possession with the duty of not committing waste; and that while thus in possession plaintiff committed waste which resulted in the freezing of the 1948 lemon crop, to the defendants' damage in the sum of not less than $50,000.

The court made long findings, which were in all material respects in favor of the plaintiff, and which specifically found against the defenses and counterclaims of the defendants. Among other things, it was found that certain sums had been paid on this note on various dates; that there was an unpaid balance on the principal sum of the note as of July 28, 1949, in the sum of $92,195.40; that all interest accruing before that date had been paid; and that two amounts were paid in 1952, including $33,490.20 on August 13, 1952, which amounts reduced the unpaid principal of said note to $86,743.34 as of August 13, 1952, and paid all interest accrued up to that date. As conclusions of law, it was found that the plaintiff was entitled to judgment against the individual defendants for this balance of $86,743.34, for the amounts of the expenses paid by the plaintiff, and for interest thereon as provided in the note and trust deed. Judgment was entered accordingly as against the individual defendants for $119,-394.07, including $5,000 attorneys' fees allowed by the court, and for costs of suit. From this judgment the individual defendants and the trustees of the bankrupt estate of Sentinel Butte Corporation have appealed.

In outlining the issues raised on this appeal the appellants state: "The record poses only legal questions, the operative

facts not being in dispute.'' It is first contended that the written instruments set forth in or attached to the complaint conclusively establish that this was a contract calling for usury, and that the evidence established that the respondent charged and collected usurious interest. It is argued that by the terms of the contract the appellants were required to pay interest in excess of 10 per cent in that they were required to pay 10 per cent on the principal actually due ''upped by a bonus of about $6,000 and plus additional interest of 10% on said bonus''; that the agreed reduction of $625 was to be credited only on the final installment of $76,000 and then only if that installment was paid on January 5, 1948; that the appellants being required to pay 10 per cent on the past due principal represented by the face of the note were thus required to pay an extra 10 per cent on the $625 until the final payment of $76,000 had been fully paid; and that since the $625 reduction was not mentioned in the trust deed or the chattel mortgage, which set forth the original note, those documents called for the payment of the full sum of $201,000 without regard to the agreed reduction. It is further argued that the respondent charged and collected usurious interest; that on January 15, 1948 (the maturity date of the note) the unpaid principal amounted to $125,375, being the unpaid amount of the actual loan in the sum of $120,000 ''upped by the amount of the corrected bonus of $5375.00''; that in crediting payments made in 1949 interest was collected on the full amount of that principal, including the corrected bonus of $5375; and that the evidence shows that the appellants were charged with 7 per cent interest on the adjusted principal of $200,375 up to maturity, and were charged with 10 per cent interest on the adjusted bonus of $5,375 after January 15, 1948, the maturity date.

It clearly appears that it was the intent of the parties to this loan to provide for a bonus that was within the legal limit, and that an error was made in drawing the note which was contrary to the true intent of the parties. The correction of $625 was made within a few days, before the trust deed was recorded, and before any interest was due or paid. It follows that no penalty attaches because of the error itself. (*Strauss* v. *Bruce*, 139 Cal.App. 62 [33 P.2d 71].) This reduction of $625 was immediately effective as of the date of the note, was in no way conditional, and was not contingent upon the payment of the final installment on the precise date of January 15, 1948. The borrowers were not required to

pay 10 per cent interest on this $625 after maturity and until the final installment should be paid. There is no question that the bonus of $5,375 constituted interest but under article XX, section 22 of the Constitution such a bonus is not illegal unless it results in exacting more than 10 per cent interest from the borrower. A simple mathematical computation demonstrates that if all payments had been made on this note as corrected, as they became due, the legal limit of 10 per cent interest would not have been exceeded  This contract did not on its face call for usurious interest. (*Sharp* v. *Mortgage Security Corp.*, 215 Cal. 287 [9 P.2d 819].)

It clearly appears from the evidence that no usury was charged or collected up to the maturity of the note on January 15, 1948, with the corrected bonus of $5,375 figured as interest. It also appears that, in fact, no interest of any kind was ever charged on the reduction of $625 either before or after maturity, and that no interest of any kind or at any rate was ever charged on the $5,375, the corrected discount, after January 15, 1948. While 7 per cent was charged on this $5,375 up to January 15, 1948, that interest was accounted for in computing all interest paid, including the discount, up to that date, and the total interest thus paid did not exceed the permissible amount. No usury was shown in law or in fact up to the final maturity of this note on January 15, 1948. ▮ The fact that interest was thereafter charged and collected on the unpaid balance of the principal of the note, as agreed to by the parties, was brought about and resulted from the default of the borrowers, and their voluntary action in that regard could not make the transaction usurious. Similar principles to those applied in *French* v. *Mortgage Guarantee Co.*, 16 Cal.2d 26 [104 P.2d 655, 130 A.L.R. 67], are applicable here. The appellants rely on *Haines* v. *Commercial Mortg. Co.*, 200 Cal. 609 [254 P. 956, 255 P. 805, 53 A.L.R. 725] ; *Penziner* v. *West American Finance Co.*, 10 Cal. 2d 160 [74 P.2d 252] ; *Rice* v. *Dunlap*, 205 Cal. 133 [270 P. 196] ; *Middlekauf* v. *Vinson*, 106 Cal.App.2d 204 [234 P.2d 742] ; *Anderson* v. *Lee*, 103 Cal.App.2d 24 [228 P.2d 613] ; and similar cases. Each case must be decided on its own facts and there is nothing in any of those cases which would compel a holding, under the evidence here, that usury appears in connection with the interest charged or collected after the final maturity date of this note. While interest at the agreed rate was charged and collected on the balance of the

principal, after the maturity date, the collection of such interest, resulting from the default of the borrowers, does not under the decisions of this state bring the creditor under the penalty of the usury law, where no violation of that law is present in the inception of the contract or is called for by the terms thereof. The court's findings to the effect that this transaction was not usurious are sustained by the evidence and, as the appellants state, the operative facts are not in dispute.

It is next contended that the original maturity date of the note was extended, and strict compliance with its terms waived, by the liquidation agreement; that the plaintiff failed to serve a notice requiring the defendants to strictly comply with the terms of the note and giving them a reasonable time within which to comply; and that it follows that there was no legal default upon which this action could be based. The facts given as supporting this contention are that the appellants' financial plight was well known to the respondent; that in order to solve this problem Sentinel Butte Corporation adopted a resolution providing for the sale of portions of its ranch and the application of the proceeds in payment of this note; that the respondent consented to these sales, and accepted shares in the mutual water company as additional security; and that upon the receipt of its share of the proceeds from these sales the respondent released the sold acreage from its trust deed lien. In support of this contention the appellants cite *Panno* v. *Russo*, 82 Cal.App.2d 408 [186 P.2d 452]; *Hunt* v. *Mahoney*, 82 Cal.App.2d 540 [187 P.2d 43]; *Atkinson* v. *Pacific Fire Extinguisher Co.*, 40 Cal.2d 192 [253 P.2d 18]; *Eddleman* v. *Deavel*, 107 Cal.App.2d 351 [237 P.2d 38]; and *Katemis* v. *Westerlind*, 120 Cal.App.2d 537 [261 P.2d 553]. These cases pertain to specific performance and related questions with respect to the right of forfeiture under contracts of sale or lease. No question of forfeiture was here involved, and no agreement by the respondent that the original maturity date of the note would be extended for any period whatever was proved. The respondent was not a party to the liquidation agreement and the fact that it was willing to wait a reasonable time to see if appellants' liquidation program would succeed in no way extended the maturity date of the note, or waived the existing default, and no such notice requiring strict compliance with the terms of the note was required.

■ It is next contended that the respondent controlled and dictated the liquidation operations, that while so doing it committed waste and acts of business compulsion, that these acts resulted in the freezing of the lemon crop for 1948 on a portion of the ranch, and that this resulted in a loss to the appellants of not less than $50,000, which should be charged to the respondent. It is argued that the liquidation operations were supervised and controlled by the respondent; that the respondent was in effect a mortgagee in possession of the portion of the ranch involved in the liquidation; that as such it was bound to protect the property and not commit waste; that in the fall of 1948 a valuable lemon crop was growing on the part of the ranch that was being sold under the liquidation program; that Sentinel Butte was ready to pick and market this crop; that although warned that a severe cold and freeze were on their way the respondent refused to permit Sentinel Butte to harvest the crop; and that by reason of this conduct the appellants were damaged. There was no evidence that the respondent supervised or controlled this liquidation program, and none which would support the conclusion that it was in the position of a mortgagee in possession of the ranch property or of this crop of lemons. The respondent did not have a crop mortgage on these lemons, and Sentinel Butte was in possession and control. The uncontradicted evidence is that the respondent did not threaten to foreclose its trust deed in the event this crop of lemons was picked, or at all, during this period. There was evidence that an agent of the respondent advised R. M. Crane, one of the appellants, that it would not look with favor upon the harvesting of these lemons because it would interfere with the sale of the land at that time. Crane testified that he wrote a letter to the respondent calling its attention to the fact that "this cold weather" was coming up; that he called respondent's agent to get his permission to pick the lemons; that this agent said to go ahead and pick them but that he would consider it a breach of the liquidation program and looked with disfavor on that procedure; and that while there was no threat of foreclosure they refrained from picking the lemons mostly because of fear of foreclosure and because of the pressure thus brought to bear. There was nothing to show waste committed by the respondent, or business compulsion within the established rules, and the evidence supports the findings to the effect that the facts relied on by the appellants in this connection were not true.

It is next contended that this loan transaction was adopted and ratified by Sentinel Butte and that this corporation was substituted as the principal debtor in place of the individual defendants, thus relieving the individual appellants from any liability on this obligation. It is argued that the instruments evidencing this loan agreement provided for the formation of a corporation for the purpose of taking over and operating this ranch property; that pending the formation of the corporation title to the ranch was placed in the names of Evans and his wife who executed the trust deed and chattel mortgage, which instruments did not name the other individual appellants as parties; that after its incorporation Sentinel Butte ratified and confirmed the acquisition of the property by Evans and his wife as agents for and on behalf of that corporation while it was in process of organization; that after the incorporation of Sentinel Butte it operated the ranch as a distinct corporate entity and respondent's dealings were then all had with Sentinel Butte; that statements and invoices were submitted by the respondent to Sentinel Butte and were not directed to the individual appellants; that payments on the note were all made by Sentinel Butte and not by the individual appellants; that the respondent wrote various letters to Sentinel Butte acknowledging payments "in accordance with the terms of your note"; that Sentinel Butte ratified the loan agreement and accepted its benefits and the respondent had knowledge thereof; and that this constituted a novation. The evidence does not sustain the contention that the individual appellants were acting as sureties or guarantors for Sentinel Butte Corporation when they signed this note, and there is no evidence to sustain the contention that the liquidation agreement with respondent's subsequent acts constituted a novation which relieved the individual appellants from liability as makers of this note. In the letter of June 13, 1946, setting forth the understanding of the loan agreement, it was stated that the individual defendants intended to form a corporation to take over and operate this property. Not only does this indicate that this corporation was to be organized to act as the agent for these individuals, but it was clearly stated that it was understood that the transfer of this property to the proposed corporation should in no manner relieve the individual appellants from their liability under this note. It clearly appears that there was no agreement between the respondent and Sentinel Butte Corporation whereby the terms

of the promissory note were altered, that the respondent never agreed to any substitution of Sentinel Butte Corporation as the principal debtor, and that in sending statements to and accepting payments from Sentinel Butte the respondent was dealing with that corporation merely as the agent of the individual appellants. As the trial court pointed out, there was no evidence indicating that the respondent misled any of the appellants in this regard at any time, there was no evidence that any of the defendants notified the respondent that he or she was signing in any capacity other than that indicated by the note and letter, and the defendants failed to meet the burden resting upon them in connection with this issue. The evidence supports the court's findings in this connection and refutes the contentions here made.

Finally, it is contended that the findings are deficient in that specific findings were not made as to whether certain testimony made the loan usurious, as to whether the indebtedness was in legal default, as to whether the individual defendants were sureties or guarantors, as to whether their secondary liability was extinguished by novation, and as to whether the plaintiff was guilty of waste and business compulsion in connection with the freezing of the lemon crop. The court specifically found that each and all of the allegations with respect to usury, and with respect to these other matters of affirmative defense, as pleaded by the defendants, were untrue. These were all pleaded as offsets to the claim of the plaintiff and the allegations with respect to each were found to be untrue. The findings were sufficient to cover the material issues and, in view of the findings made, no further findings were necessary.

The judgment is affirmed.

Griffin, J., and Mussell, J., concurred.

A petition for a rehearing was denied April 4, 1955, and the petition of appellants with the exception of M. D. and Alice K. Rayner for a hearing by the Supreme Court was denied May 4, 1955. Carter, J., did not participate.