STANLEY J. HOW & ASSOCIATES, INC., Plaintiff,

v.

Edwin A. BOSS, Defendant.

Civ. No. 5-1349.

United States District Court
S. D. Iowa,
Central Division.

Oct. 31, 1963.

Iowa. John P. Ford, Schmid, Snow & Ford, Omaha, Neb., for plaintiff.

Kent M. Forney, Bradshaw, Fowler, Proctor & Fairgrave, Des Moines, Iowa, for defendant.

HANSON, District Judge.

The plaintiff claims that on or about April 20, 1961, the plaintiff and defendant entered into a contract for the performance of architectural services by the plaintiff for the defendant; that the plaintiff performed said contract and prepared detailed plans and specifications which were completed on or about October 20, 1961, for a motor hotel and restaurant at 66th and France Streets, Edina, Minnesota; that the estimated cost of the said motor hotel and restaurant was $850,000.00 and that a firm bid from a general contractor for construction of said project was received in the sum of $850,000.00; that thereafter, and for reasons unknown to the plaintiff the defendant proceeded no further with the project; that pursuant to the provisions of said contract plaintiff is entitled to payment of a fee of 4½% of the said $850,000.00 for performance of architectural services for preparation and completion of specifications and general working drawings, which amounts to $38,250.-00, of which plaintiff has received from defendant the sum of $14,500.00 on account, leaving a balance of $23,750.00, which remains due and unpaid.

The pertinent parts of the contract are:

B. A. Webster, Jr., Gamble, Read, Riepe, Martin & Webster, Des Moines,

"This agreement made as of the twentieth (20th) day of April in the year Nineteen Hundred and Sixty-One by and between Boss Hotels Company, Inc. hereinafter called the Owner, and Stanley J. How and Associates, Inc. hereinafter called the Architect * * *.

"The Owner agrees to pay the Architect for such services a fee of six (6) per cent of the construction cost of the Project, with other payments and reimbursements as hereinafter provided, the said percentage being hereinafter called the Basic Rate * * *.

"Payments to the Architect on account of his fee shall be made as follows, subject to the provisions of Article 4:

"Upon completion of the preliminary studies, a sum equal to 25% of the basic rate computed upon a reasonable estimated cost.

"During the period of preparation of specifications and general working draws, monthly payments aggregating at the completion thereof, a

sum sufficient to increase payments to 75% of the rate or rates of commission arising from this Agreement, computed upon a reasonable cost estimated on such completed specifications and drawings, or if bids have been received, then computed upon the lowest bona fide bid or bids * * *.

"The Owner and the Architect each binds himself, his partners, successors, legal representatives and assigns to the other party to this Agreement and to the partners, successors, legal representatives and assigns of such other party in respect to all covenants of this Agreement.

"Except as above, neither the Owner nor the Architect shall assign, sublet or transfer his interest in this Agreement without written consent of the other.

"IN WITNESS WHEREOF the parties hereto have made and executed this Agreement the day and year first above written.

"Owner:  /s/ Edw. A. Boss       Architect:
· "By:  Edwin A. Boss, agent for   Stanley J. How and Associates,
a Minnesota corporation to be   Inc.
formed who will be the obligor.   /s/ Stanley J. How"

———◆———

Early in the year 1960 the defendant and certain business associates, including Edwin R. Hunter, Jr. of Des Moines, Iowa, became interested in operating a motor hotel to be built at the Southdale Shopping Center in Edina, Minnesota, a suburb of Minneapolis. Motor Court Systems, Inc., a Minnesota corporation, which had a lease on this land with the Southdale Holding Company, was to build and construct a motor hotel. In approximately May of 1960, the plaintiff was engaged and employed by Motor Court Systems, Inc. to prepare the plans, drawings and specifications for said motel. In approximately June of 1960, an agreement was entered into between Motor Court Systems, Inc. and Edwin R. Hunter, on behalf of a corporation to be formed which would operate the new motor hotel. These plans were never realized.

In the early part of 1961, the lease held by Motor Court Systems, Inc. was terminated. On or about April 20, 1961, the defendant together with Mr. Hunter and representatives of the owners of Southdale Shopping Center met in the offices of Southdale at Edina for the purpose of entering into a lease between the promoters of a new corporation to be formed by the defendant and his associates and owners of Southdale Shopping Center. The plaintiff was also present at that meeting and the architectural agreement now being sued on was signed during that meeting.

At said meeting on April 20, 1961, a lease between Boss Hotel Co., Inc. and Southdale Holding Company was negotiated and executed. Boss Hotel Co., Inc. was the obligor on that lease. This lease provided that a corporation would be organized and that the lease would then be assigned to this new corporation.

The plaintiff had secured blank copies of the standard form of agreement between owner and architect on forms prepared and printed by the American Institute of Architects. He took these forms to the Southdale offices and penciled in the appropriate blanks and gave the forms to a secretary to be typed. The first page of such contract stated that it was between Boss Hotels Co., Inc. and Stanley J. How & Associates, Inc., and places for signature in this manner were typed on the third page.

After completion of the signing of the lease the defendant, Mr. Boss, and his associate, Mr. Hunter, took the prepared contract to a back room out of the hearing of the plaintiff and discussed it between themselves. At that time the de-

fendant erased the words "Boss Hotels Co., Inc." from the place for signature and below the line typed the words "By: Edwin A. Boss, Agent for a Minnesota Corporation to be formed, who will be the Obligor."

The defendant and Edwin R. Hunter then took the contract back to Stanley J. How and showed it to him. Mr. Boss then said, "Is this all right?" or "Is this acceptable, this manner of signing?" or words to that effect. Stanley How said "Yes," and the contracts were then signed by the defendant and Stanley J. How.

Plaintiff returned to Omaha and complete plans, working drawings, and specifications for the construction of the motel were prepared by his offices, and sums were expended by the plaintiff for engineering and consultation services.

The defendant and his associates caused an Iowa corporation to be formed by the name of Minneapolis-Hunter Hotel Co. Fifteen Thousand Dollars ($15,000.00) of stock was issued with Edwin R. Hunter receiving ten percent (10%), John C. Hunter receiving ten percent (10%), Elizabeth T. Woodward receiving five percent (5%) and Boss Hotels Company receiving the remaining seventy-five percent (75%).

In October of 1961 the plans were forwarded to Preston Haglin, a Minneapolis contractor, whom the parties had agreed to be general contractor so long as his bid was competitive with other general contractors. Haglin gave a preliminary estimate of Nine Hundred Sixty-five Thousand Dollars ($965,000.00) which exceeded the planned budget; thus, further attempts were made to reduce the cost of the construction.

In November of 1961, Preston Haglin proposed to construct the building, with certain modifications, for Eight Hundred and Fifty Thousand Dollars ($850,000.00).

In July, 1961, the plaintiff received an amount of $7,500.00 as partial payment on the contract. In May, 1962, the defendant was already in default upon his

lease with Southdale and he requested the plaintiff to furnish preliminary sketches for a building with a budget of $600,000.00. The plaintiff informed Boss that he would proceed no further without some further payment on its fee. Consequently, the defendant forwarded to the plaintiff an amount of $7,000.00.

The plans for the motel were finally completely abandoned by the promoters. An Iowa Corporation had been formed in May, 1961, called the Minneapolis-Hunter Hotels Co. The checks sent to Stanley How bore the name of this corporation. They were signed by Edwin Hunter. Mr. Hunter was also the General Manager of Boss Hotels, Inc. Mr. Boss was President of Boss Hotels, Inc. and was also Assistant Secretary and Assistant Treasurer. Mr. Boss and Edwin Hunter, acting ostensibly for themselves and for the Boss Hotels, Inc., were promoters. They apparently organized the Minneapolis-Hunter Hotel Co. as a corporation. To what extent it actually came into being is not clear in the record. No corporate charter, by-laws, or resolutions were offered into evidence. At any rate, if this new corporation exists, there are no assets in it to pay the amount due on the contract.

█ There really is not much debate as to what the law is on the questions raised. Both parties site King Features Syndicate, Dept. of Hearst Corp. International News Service Division v. Courrier, 241 Iowa 870, 43 N.W.2d 718, 41 A.L.R.2d 467, for the proposition that a promoter, though he may assume to act on behalf of the projected corporation and not for himself, will be personally liable on his contract unless the other party agreed to look to some other person or fund for payment.

Comment b under Section 326 of the R.S. of Agency sets out the three possible understandings that the parties may have when the agreement is made on behalf of a corporation to be formed by one of the parties. These are as follows:

(One) An offer or option to the corporation to be formed which will result in a contract if it is accepted when the cor-

poration is formed. The correlative promise for the continuing offer or option is the promoter's promise to organize the corporation and give it the opportunity to pay the debt. Cases on this type of understanding are cited in 41 A.L.R.2d p. 517. This type of situation was in the Restatement treated as two different types of situations, but for purposes of this case can be treated as one type of situation.

■ The second type of situation is where the parties agree to a present contract by which the promoter is bound, but with an agreement that his liability terminates if the corporation is formed and manifests its willingness to become a party. This is an agreement for a future novation best illustrated by the recent Iowa decision, Decker v. Juzwik, 121 N.W.2d 652.

This second possible interpretation is not very important in this case because a novation was not pleaded or argued. Cases holding that a novation must be pleaded are: First & American National Bank of Duluth v. Whiteside, 207 Minn. 537, 292 N.W. 770; Dintenfass v. Wirkman, 14 Pa. Dist. & Co. R. 798; Benton v. Morningside College, 202 Iowa 15, 209 N.W. 516; Tuttle v. Michols Poultry & Egg Co., 240 Iowa 199, 35 N.W.2d 875; Glover v. First University Parish of Dowagiac, 48 Mich. 595, 12 N.W. 867.

The third type of understanding is where the parties have agreed to a present contract upon which, even though the corporation later becomes a party, the promoter remains liable either primarily or as surety for the performance of the corporation's obligation. There are many cases cited in A.L.R.2d annotations to King Features Syndicate, Dept. of Hearst Corp. International News Service Division v. Courrier, supra, wherein the courts have sustained this proposition. See also Randolph Foods, Inc. v. McLaughlin, 253 Iowa 1258, 115 N.W.2d 868.

■ In the present case, the contract was signed: "Edwin A. Boss, agent for a Minnesota corporation to be formed who will be the obligor." The defendant

argues that this is an agreement that the new corporation is solely liable. The problem here is what is the import of the words "who will be the obligor." It says nothing about the present obligor. The words "will be" connote something which will take place in the future. It was held in Muirhead v. Johnson, 232 Minn. 408, 46 N.W.2d 502, that the words "will be" when used in the third person ordinarily denote simple futurity. It contemplates future and further action. While that case is not factually the same as the present one, it is indicative of the ordinary meaning of these words. In Bass v. Ring, 215 Minn. 11, 9 N.W.2d 234, the court said words are always to be given the meaning they have in common use unless there are very strong reasons to the contrary. This is the general rule.

About the closest case to the present in terms of signature is O'Rorke v. Geary, 207 A. 240, 56 A. 541, where the contract was signed "D. J. Geary for a bridge company to be organized and incorporated as party of the second part." The payments were to be made monthly and work was to be done before it was possible for the corporation to make the payments. The court held the promoter personally liable.

In White & Bollard, Inc. v. Goodenow, 58 Wash.2d 180, 361 P.2d 571, a case cited by both parties, the contract was signed: "Melvin D. Lurie, an agent for a corporation to be formed." The court said this language meant that Melvin D. Lurie was bound by the contract but in dicta states that if the corporation was formed this was also an agreement to allow the corporation to assume the liability of Melvin D. Lurie. The defendant cites this case only to distinguish it by saying that the present contract contains the additional words: "who will be the obligor." However, these words only tend to make clear what the court implied in the Goodenow case. It cannot be said that they express any clear intention to do more than that. In O'Rorke v. Geary, supra, language almost identical to that used in White & Bollard, Inc. v. Goode-

now was said not to be an agreement for a novation. O'Rorke v. Geary is more similar factually to the present case than is White & Bollard, Inc. v. Goodenow.

These cases show that this is a situation where the parties used ambiguous words to describe their intentions. To resolve this ambiguity, it is helpful to resort to the usual rules of interpretation of ambiguous contracts.

■ One rule of interpretation is to give meaning to all parts of the contract unless there are parts of the writing so inconsistent that it is impossible. The contract states that three-fourths of the contract price was to have been paid by the time the drawings and specifications were completed, and that this was to have been paid in monthly payments. If this part of the contract is given effect, it clearly tends to show that the parties intended that there was to be a present obligor on the contract. The plaintiff's interpretation of the way the contract was signed is consistent with all parts of the contract. The defendant's interpretation is inconsistent with the payment provisions of the contract. The court must try to give effect to all parts of the agreement if they can be found consistent. Harvey Construction Co. v. Parmele, 253 Iowa 731, 113 N.W.2d 760; Ketay v. Gorenstein, 261 Wis. 332, 53 N.W.2d 6. Another rule is that the writing must be strictly construed against the party who drafted the writing in question. Marty v. Champlin Refining Co., 240 Iowa 325, 36 N.W.2d 360; Pazawich v. Johnson, 241 Iowa 10, 39 N.W.2d 590; C. F. Huntsman v. Eldon Miller, Inc., 251 Iowa 478, 101 N.W.2d 531. In this case, it was the defendant who wrote the ambiguous words and they must be construed in favor of the plaintiff.

■ Also, and perhaps most important, there are a number of cases which say that in the promoter contract cases where the contract called for performance, at least in part, before the corporation is organized, this indicates that the promoter is intended to be personally liable on the contract. See 41 A.L.R.2d 503, Section 11. This was the type of case where the work was to begin by Mr. How before the corporation was organized and certainly to be completed before the corporation was in business.

The R.S. of Agency Section 326 is exactly the same rule of law as has been used by the Iowa court in King Features Syndicate, Dept. of Hearst Corp. International News Service Division v. Courrier, supra, and again appeared in Decker v. Juzwik, supra. Comment a of this Section of the Restatement explains the rule. It says:

"If, therefore, the other party knows that there is no principal capable of entering into such a contract, there is a rebuttable inference that, although the contract is nominally in the name of the nonexistent person, the parties intend that the person signing as agent should be a party, unless there is some indication to the contrary."

In the present case, there are not sufficient words to show an indication to the contrary to offset this inference.

Mr. How's testimony and his business record, Exhibit K, show that he did not intend that the new corporation was the sole obligor on the contract. He stated that he believed Boss Hotel Co., Inc. or Boss Hotels was liable on the contract. This is not inconsistent with thinking Mr. Boss was liable on the contract but it is inconsistent with intending that the new corporation was to be solely liable on the contract. Promoters other than the one signing the contract may be liable on the contract also. See King Features Syndicate, Dept. of Hearst Corp. International News Service Division v. Courrier, supra. In this case, Boss Hotel Co., Inc. was not made a party but this does show a reason why Mr. How might state that he felt Boss Hotel Co., Inc. was liable on the contract. The oral testimony on this point was only generally to the effect that the parties agreed that the contract was all right as written, but it did tend to support the conclusion that Mr. Boss was intended to be the present obligor on the contract.

Even if this rule in Section 326 of the R.S. of Agency means that any words to the contrary destroy the inference, the words which were used, the rules of interpretation of contracts, and the extrinsic evidence offered by the parties show conclusively that the reaonable interpretation put on the contract by Mr. How, that is, that Mr. Boss was a present obligor on the contract, must be taken as the proper interpretation of the contract.

██ It might well be that the parties were thinking about an understanding such as the second type wherein there would be a future novation. However, the defendant didn't feel this was the situation. He did not plead or argue novation or agreement to that effect. Therefore, the only issue was whether the contract was a continuing offer to the then nonexistent corporation or was an agreement that Mr. Boss was a present obligor. While the agreement was not completely clear, the words "who will be the obligor" are not enough to offset the rule that the person signing for the nonexistent corporation is normally to be personally liable. This is especially true when considered in the light of other circumstances of this case and would be true even without the inference that the law puts on this situation.

██ The defendant in his brief argues that there was an adoption of the contract by the new corporation. See the fourth brief point in the defendant's brief. Adoption of the contract by the corporation is not sufficient to relieve the promoter of his liability. There must be a novation or agreement to that effect. Decker v. Juzwik, supra, 121 N.W.2d p. 659 citing 18 C.J.S. Corporations § 132, p. 532. The defendant does not really argue the contrary. The defendant did not plead a novation nor argue that one existed. The defendant argues that the plaintiff agreed to look solely to the new corporation, and it is in this regard that the defendant says the plaintiff's hopes were fulfilled when the corporation, so the defendant claims, did adopt the contract.

While in Decker v. Juzwik, supra, the court in sustaining the novation relied in part upon the fact that payments had been made by the new corporation, there are a number of cases saying that the mere fact that payments were made by a third party and accepted by the plaintiff is not sufficient to establish a novation. See Hutchings v. S. E. C., 287 Mich. 701, 284 N.W. 614; Pacific Finance Corporation v. Crane, 131 Cal.App.2d 399, 280 P.2d 502; Bigelow v. MacCrone, 267 Mich. 217, 255 N.W. 191. Also there was no showing in this case that any authorization was made by proper corporate action. See Hutchings v. S. E. C., supra, 284 N.W. p. 617. The case of Riber v. Morris, 279 Mich. 344, 272 N.W. 700, is more on point than the above cases. In that case, the court found an agreement to allow the novation, but still held that any inference arising from payment by a third person disappears when in conflict with credible evidence. This case is clearly distinguishable from Decker v. Juzwik, supra. The Minneapolis-Hunter Corporation was never in operation. The evidence shows that payments were to be made on the contract before the new corporation was to go into business. In Decker v. Juzwik, supra, the corporation was in business for several years.

The defendant argues that a practical construction has been put on the contract to the effect the plaintiff agreed to look solely to the credit of the new corporation. For this construction, the defendant relies upon the fact that the two checks which were given to Mr. Boss carried the letterhead of the new corporation and were signed by Edwin Hunter. As already explained, this is not sufficient especially where a novation was not pleaded or argued. This would be an attempt to penalize the plaintiff for being patient and not demanding strict compliance. The court feels there was no waiver of rights and none was pleaded.

██ The defendant also argued that the plans and specifications prepared by Mr. How were not approved by the Southdale Holding Co. This was clearly not a condition of the contract made with Mr. How. It may have been a condition in the lease whereby the promoters could

not build the building until this was approved. It isn't necessary to rule on that because Mr. How was not a party to the lease. Also the pleadings of the defendant are defective in this respect. Both Rule 98 of the Iowa Rules of Civil Procedure, 58 I.C.A., and Federal Rule 9(c) require that conditions precedent be pleaded specifically and with particularity.

In this case, the defendant was the principal promoter, acting for himself personally and as President of Boss Hotels, Inc. The promoters abandoned their purpose of forming the corporation. This would make the promoter liable to the plaintiff unless the contract be construed to mean: (1) that the plaintiff agreed to look solely to the new corporation for payment, and (2) that the promoter did not have any duty toward the plaintiff to form the corporation and give the corporation the opportunity to assume and pay the liability.

The cases directly on this point are not numerous. In Davis v. Joerke, 47 N.D. 39, 181 N.W. 68, the court said: " * * * if these parties (the defendants) undertook to answer for the assumption of this obligation (the liability in that case) by the corporation, and then joined in a plan to frustrate its assumption, they have, of course, repudiated their obligation, and are liable." 41 A.L.R.2d 518 quoted this case as saying:

"It was held that if the true agreement of the signers was that the bank should assume the obligation when the charter was issued, and they then abandoned the plan to secure a charter so that the bank could not assume the liability, they were personally liable; but if the agreement was that the solicitor was to look to the corporation and he was content to take the risk of the ultimate incorporation and assumption of his claim by the corporation, the signers would not be precluded from abandoning the project in the exercise of their judgment in conjunction with the other stockholders."

King Features Syndicate, Dept. of Hearst Corp. International News Service Division v. Courrier, supra, appears to adopt this rule in dicta citing 18 C.J.S. Corporation § 132. This case is cited for this proposition in 41 A.L.R.2d p. 517. Clearly, the cases cited for this rule do not require, as a requisite to its application, knowledge on the part of the plaintiff that the corporation does not exist.

Whether the duty not to abandon the project exists is a matter of interpretation of the agreement. The distinction pointed out in Davis v. Joerke, supra, and in 41 A.L.R.2d 518 needs some explanation. In all situations wherein the promoter is not personally bound, the contracting party is agreeing that the new corporation should assume the liability. The phrase "content to take the risk of the ultimate incorporation and assumption of his claim" is the key to the distinction. In some cases, the promoters do not agree that this assumption will take place.

■ Applying this law to the present case, the court would have to hold that even if the plaintiff had agreed to look to the credit of the new corporation, the defendant would be liable. The defendant was the key promoter and as such would be a primary factor in abandoning the project. This would make the defendant liable.

■ The liability owed to the plaintiff was to be computed upon a reasonable cost estimate on the completed specifications and drawings, or if bids have been received, then the liability would be based on the lowest bona fide bid or bids. The plans and specifications were completed and sent to the contractor in October, 1961. The bid appeared to be $965,000.00. However, this bid appeared to be received after the plans and specifications were completed. This exceeded the budget of $850,000.00 and was reduced to that amount. $850,000.00 is the correct figure to use in determining the liability because it was the reasonable cost estimate on the completed specifications and drawings. The liability ac-

944

crued at this time according to the contract. The figure $650,000.00 had not been considered up to this time, and, therefore, it was not the reasonable cost estimate upon which to base the liability.

At the time the specifications and drawings were completed, the amount owed the plaintiff was 75% of 6% of $850,000.00 (the reasonable cost estimate). This would amount to $38,250.00. $14,500.00 of this amount has been paid leaving an amount of $23,750.00 due to the plaintiff.

Accordingly the court concludes that the plaintiff, Stanley J. How & Associates, Inc., should have and recover judgment against the defendant, Edwin A. Boss, in the sum of $23,750.00, with interest and costs and, accordingly, a judgment will be entered.

It is ordered that the foregoing shall constitute the findings of fact, conclusions of law, and order for judgment in this case. Rule 52(a) of the Federal Rules of Civil Procedure.