R. W. FRAZIER and A. Wertheimer, as Receivers of 8701 Collins Avenue, Inc., Alleged Bankrupt, Appellants,

v.

Harrison O. ASH, Appellee.

Harrison O. ASH, Cross-Appellant,

v.

R. W. FRAZIER and A. Wertheimer, as Receivers of 8701 Collins Avenue, Inc., Alleged Bankrupt, Cross-Appellees.

No. 15828.

United States Court of Appeals
Fifth Circuit.

June 5, 1956.

---

Paul G. Hyman, Harold Friedman, Britton, Hodges & Hyman, Feibelman & Friedman, Miami, Fla., for appellants.

**322**

John H. Wahl, Jr., Miami, Fla., Wendell A. Falsgraf, Cleveland, Ohio, Walton, Lantaff, Schroeder, Atkins, Carson & Wahl, Miami, Fla., for Harrison O. Ash. Falsgraf, Reidy & Shoup, Cleveland, Ohio, of counsel.

Before TUTTLE, CAMERON and JONES, Circuit Judges.

JONES, Circuit Judge.

A petition in bankruptcy was filed against 8701 Collins Avenue, Inc. Its principal assets were the Biltmore Terrace Hotel on the ocean front at Miami Beach, Florida, the leasehold interest in the land upon which it was built and upon an adjoining tract, and the furniture, furnishings and equipment of the hotel. Most, perhaps all, of the bankrupt's interests were encumbered by mortgages or other liens. The appellants, R. W. Frazier and A. Wertheimer, were appointed Receivers of the property of the alleged bankrupt. On Friday, October 1, 1954, the Receivers conducted a public sale of the assets of the alleged bankrupt. The properties were sold in parcels, the first of which was the lessee's interest in the land on which the hotel was situated. This sale was made subject to a first mortgage and to the interest of the lessor. The second parcel was also leasehold property and on a part of it cabanas were located, with the rest used for parking. The other parcels, separately sold, were hotel furniture, furnishings, and equipment subject to conditional sales contracts. The sales were cried by one of the Receivers. At the end of the bidding on the first parcel, for which the bid was $210,000, subject to the first mortgage and the lease, the Referee asked for the name of the bidder. The response was made, "Mr. Ash". He was asked to give his full name and he replied, "Harrison O. Ash". In response to the Referee's question "As an individual, or trustee?", he stated "Trustee". This indicates that the Referee knew or at least suspected that Ash did not intend to bid in his own right or that it was a common occurrence for bids to be made at bankruptcy sales by persons acting for others and designating themselves as trustees. There were seven sales of various properties subject to conditional sale contracts. Mr. Ash was the high bidder in three instances. On each of these three occasions, the purchaser was announced as "Mr. Ash, Trustee". When all of the properties to be sold had been struck off, the Referee asked if any interested party had any reason to offer why the sales should not be confirmed, and then stated,

> "Hearing none, the sales will be confirmed and the purchaser required to deposit 10 percent with the Trustee [sic]. They will have until October 30, 1954, to consummate the sale."

After the bidding was over, Harrison O. Ash and Arnold [A. S.] Kirkeby stated to newspaper reporters that they and Walter Schott, Sr., "were taking the [hotel] properties over". On the same day there was executed a Certificate of Incorporation of Miami Beach Biltmore Terrace, Inc. The incorporators and directors there named were A. S. Kirkeby, Walter E. Schott, Jr., and Harrison O. Ash, who were also designated as President, Secretary and Treasurer, respectively, of the corporation. On the day the sale was held, the attorney for Ash transmitted by letter to the Receivers on behalf of "our principal, H. O. Ash", a bank cashier's check for $23,325, equaling ten per cent. of the aggregate of the bids made by Ash. On October 4, 1954, which was the Monday following the public bidding, the Certificate of Incorporation of Miami Beach Biltmore Terrace, Inc. was filed in the office of the Secretary of State of the State of Florida, and Miami Beach Biltmore Terrace, Inc. became a de jure corporation. Fla.Stat.1955, § 608.-04, F.S.A. On the day the corporation's legal existence began, October 4, 1954, one of the Receivers gave a written receipt for the ten per cent. deposit. In this instrument it was recited:

> "We acknowledge that this bid by Mr. Ash, as trustee, was in behalf of the Miami Beach Biltmore Terrace, Inc., a Florida corporation, and that

the said corporation will complete the said transaction with the Receivers on or before October 30, 1954."

On October 14, 1954, the Receivers petitioned for a determination of the administrative expense to be charged against the second mortgage on the hotel property in the event such mortgage should be acquired by the purchaser of the property and utilized as part of the purchase price. In this petition it was recited that "Harrison O. Ash, as Trustee" was the successful bidder, and that "Mr. Ash, as Trustee for a corporation to be formed" made a deposit upon the purchase price. The corporation had, of course, been formed ten days before the petition was filed.

On October 19, 1954, the Receivers filed their Report of Sale in which they recited that they had offered the several parcels of the bankrupt's property for sale and, with respect to the items with which we are concerned, reported that "the highest and best bid was made by Harrison O. Ash, as Trustee". The report incorporated a prayer "to confirm the sales to the highest and best bidders". On the day this Report was filed, the Referee entered an order confirming the sales to "Harrison O. Ash, as Trustee". An advertisement was published in a Miami newspaper on October 13, 1954, listing for sale an "Almost New North Shore Miami Beach Hotel". The advertisement stated "Must sell immediately $750,000 cash down." There was evidence that this advertisement might have referred to the Biltmore Terrace Hotel. The organization meeting of the corporation was held on October 27, 1954. In the minutes it was recited that Ash had acted as trustee for the corporation prior to its organization. By resolution his acts were ratified and the corporation accepted responsibility for the consummation of the bill. Ash executed an assignment to the corporation of his successful bids. About October 27, 1954, there was some conversation with the Receivers about the deposit of an additional $100,000 and the extension for thirty days of the time for closing. Nothing came of this proposal. On or about October 29, 1954, the Receivers were advised that the deal would not be closed. The property was readvertised and was again sold. The amount realized was $183,813.33 less than would have been received had there been a sale consummated on the basis of the prior bids.

On the Receivers' petition the Referee directed to Mr. Ash an Order to Show Cause why judgment should not be entered against him for the amount of the deficiency. Service was made upon Ash's attorney in Florida and he was personally served in Ohio by a United States Marshal of the district where he was found. Ash challenged the jurisdiction of the court over him by reason of the manner of service, and asserted that the court could not determine that he was liable in a summary proceeding. The court denied these objections, Mr. Ash filed an answer and a hearing was had. Testimony was offered by Ash that a custom prevailed of making purchases at judicial sales in the Miami Division of the District Court of the Southern District of Florida and other courts in the area by trustees on behalf of others, and of taking title to long-term leaseholds of hotel properties in corporations so as to avoid personal liability of individuals for rentals. The Referee excluded the testimony. The Referee made findings of fact and conclusions of law, and entered a judgment against Ash for $183,813.33. On Review it was held by the District Court that the proceeding was properly conducted as a summary matter but reversed the Referee on the question of the liability of Ash and denied the Receivers' petition for judgment. A better understanding of the questions presented and the manner in which they are presented can be had by quoting from the Findings, Conclusions and Judgment of the Referee and from the Order of the District Court. After somewhat extensive findings of fact and a determination that Ash was subject to the summary jurisdiction of the court, the Referee stated:

"It is contended by Ash that in announcing his name as 'Harrison O. Ash, as trustee', he intended to bid on behalf of Miami Beach Biltmore Terrace, Inc., a corporation to be formed. The Court holds that the words, 'as trustee', are merely descriptio personae, and Harrison O. Ash personally, and as an individual, was the purchaser at the sale of October 1, 1955.

"The Court further holds that since Ash, at the time of the sale did not announce that his bid was on behalf of the Miami Beach Biltmore Terrace, Inc. in any event he would be acting as agent of an undisclosed principal and would be personally liable on the bid. Furthermore, Ash could not have been acting as an agent for Miami Beach Biltmore Terrace, Inc., as this corporation was not formed at the time of the bid, and a corporation to be formed cannot have an agent, as one cannot act as an agent for a person or corporation not in being.

"Therefore, Harrison O. Ash was liable personally and individually on his bid or contract of purchase made with the receivers on October 1, 1954.

"A bankruptcy sale is a sale by the Court and neither the receivers nor the purchasers may alter or change the terms of the sale. Even if such was intended, which the Court does not find to be the case, the receipt of October 4, 1954, did not release Ash personally or as an individual, nor did it operate to substitute Miami Beach Biltmore Terrace, Inc. for Ash, since the Court did not authorize or approve a release or substitution.

"There being no material difference in the terms of the two sales, Harrison O. Ash personally and as an individual is liable and responsible for the deficiency resulting from the resale. In any event, Ash, through counsel, was present at the resale and did not object to any of its terms and conditions, and is estopped to complain.

"The whole course of conduct of Ash, including attempts to sell the property, failure to notify the receivers of his intention to refuse to perform until the time for performance was imminent and the fact that the resale was caused solely by his refusal to complete it, estop him from complaining."

The district court sustained the Referee's decision as to summary jurisdiction over Ash, but, by its order on review of the Referee's judgment, reversed the decision as to personal liability and denied the Receivers' petition, saying:

"To me the fact that the Referee at the sale raised the specific question as to how he made his bid is very important. The issue was really raised right there and then, and Mr. Ash's answer, I think, relieves him of personal liability.

"The next most important factor, I think, is the fact that when the deposit was made the receipt given was such that personal liability is negatived. True it is that a letter written by the attorney for the purchaser did not carry the implication of non-personal liability for the bid, but the type of receipt given clears up the situation as to who made the purchase at the sale.

"For these reasons I think the Referee reached the wrong conclusion, and this order reverses the Referee and constitutes a final denial of the Receivers' petition.

"I also think the Referee was wrong in sustaining petitioners' objection to the testimony proffered as to the custom in the local Bankruptcy Court as to how bids were made. If this alone was the error I would remand the case to the Referee for further action, but inasmuch as I think the order should be reversed independently of this assignment of error, I merely make this comment parenthetically."

The Receivers have appealed from the court's reversal of the judgment of the Referee. Ash has appealed from the court's ruling that the summary proceeding was proper. Other facts are disclosed by the record and other questions are raised and discussed by the parties, but those which we have stated are all that need be considered for a disposition of the case.

■■ Our first concern is the question of bankruptcy jurisdiction to determine the liability of Ash in a summary proceeding. District courts of the United States, as courts of bankruptcy, have jurisdiction to "Cause the estates of bankrupts to be collected, reduced to money, and distributed, and to determine controversies in relation thereto * * *". Bankruptcy Act, § 2, sub. a (7), 11 U.S.C.A. § 11, sub. a(7). In Collier it is said:

"A court of bankruptcy has summary power over a delinquent purchaser at a sale in the bankruptcy proceedings. He may be ordered to pay the stipulated price or to pay the deficiency resulting from a resale. The jurisdiction of the court to act summarily in such a matter is the same as that of a court of equity in any judicial sale. It is based upon the view that the purchaser makes himself a party to the proceedings and undertakes to do a particular act under the order of the court." 4 Collier on Bankruptcy, 14th Ed. 1589, § 70.98.

The rule and the reason for it have been thus stated:

"Wherever a receiver, by direction of the court appointing him, makes a sale of assets in his possession, the parties concerned in the sale are bound to recognize him as an officer of the court; and consequently the court appointing the receiver, not only has power to enforce in a summary manner the completion of the contract of sale, but the parties involved are deemed to have consented to such a proceeding." Mason v. Wolkowich, 1 Cir., 1906, 150 F. 699, 701, 17 Am.Bankr.Rep. 709, 714, 10 L.R.A.,N.S., 765. See In re Rival Knitting Co., 2 Cir., 1923, 289 F. 960; Gordon v. Woods, 1 Cir., 1951, 189 F.2d 76; In re Childs Co., 2 Cir., 1947, 163 F.2d 379.

The power of the bankruptcy court to adjudicate the liability of a bidder at a referee's sale in a summary proceeding is well settled. We then come to the question of whether the appellee, Ash, was acting for himself individually and in his own right or in a representative capacity, and whether the district court was correct in its decision that there was no personal liability of Ash on the bid made by him and the subsequent confirmation of the sale.

■■ By the Bankruptcy Act it is provided that "Real and personal property shall, when practicable, be sold subject to the approval of the court". Bankruptcy Act, § 70, sub. f, 11 U.S.C.A. § 110, sub. f. The sale here was so held. The Referee, at the close of the bidding, announced that "the sales will be confirmed." It will be noted that he used the future rather than the present tense. Confirmation by a written order may not in all cases be required. 6 Remington on Bankruptcy, 5th Ed. 55, § 2561. Formal confirmation was contemplated and was had in this case. Generally a high bidder is bound until there is a confirmation that makes a bilateral agreement or until a refusal of the court to confirm has nullified the bid.

■ The Receivers, appellants before us, urge that the words "as Trustee" in which the appellee made his bid are descriptio personae and not identification of him in a fiduciary or representative capacity. The authorities relied upon by the appellants involve written instruments where a contracting party added to his name or affixed to his signature the word "trustee" or the words "as trustee". But, as has been said by this court, "Equity is not concerned with refinements of representative description". Harris & Schafer v. Curtiss Aerocar Co.,

5 Cir., 1934, 69 F.2d 264, 265. Courts of bankruptcy are inherently courts of equity. Local Loan Co. v. Hunt, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230, 93 A.L.R. 195, 24 Am.Bankr.Rep.,N.S., 668; Texas Co. v. Miller, 5 Cir., 1947, 165 F.2d 111, certiorari denied 333 U.S. 880, 68 S.Ct. 911, 92 L.Ed. 1155. The question is one of contract law. What did the parties intend, and what was the legal effect of what they said and did?

■ The district judge is required to accept the findings of fact made by the Referee unless clearly erroneous. Bankruptcy General Order 47, 11 U.S.C.A. following section 53. Such is the rule which governs us with respect to findings of the district court. Rule 52(a), Fed. Rules Civ.Proc., 28 U.S.C.A. The Referee, in both his findings of fact and his conclusions of law, stated the contention of Ash that his bid was intended to be on behalf of the corporation to be formed. The Referee made no reference to the intention of either the Receivers or the Referee in the acceptance and confirmation of the bid. The Referee, in addition to his conclusion that the words "as trustee" were descriptio personae and the bid was in an individual capacity, heretofore discussed, held that as the name of the corporation was not announced at the time of the bidding and the corporation was not in existence when the bid was made, Ash was acting for an undisclosed principal or attempting to act for a non-existent principal, or both, and in either such case he would be personally liable. So, we think, the Referee based his decision on questions of law. We think that implicit in the district court order is a finding that Ash did not intend to become personally liable by his bid and that the Referee so understood and so intended the effect of his bid. That the Receivers, or at least one of them, on the day the corporation as a legal entity came into being, which was three days after the bid was made and accepted, recognized that which they now deny, that Ash's bid was on behalf of the corporation. That the Receivers and the Referee knew and acquiesced in the bidding by Ash in a representative or fiduciary capacity is shown by the report of sale and the order confirming the sale. No inference seems tenable except the one which the district judge must have drawn, that the Receivers and the Referee, as well as Ash, did not intend that Ash should be personally charged with liability on an obligation which he obviously was not incurring on his own behalf. The Receivers do not, as the Referee did not, specifically consider the question of the intent of the parties, but rest upon the legal conclusions set forth in the Referee's findings, conclusions and judgment. If these be correct, then what the parties, in fact, did or intended to do becomes immaterial.

■ It is a general rule that promoters are personally liable on contracts made by them for the benefit of a corporation they intend to organize. 13 Am.Jur. 252 et seq., Corporations, § 113. The Supreme Court of Florida, quoting from Corpus Juris, 2 C.J. 808, Agency, § 481, states the general rule in these words:

"'An agent will be held personally liable where he professes to enter into a contract for a principal who is at the time non-existent, or legally incompetent or irresponsible, even though in thus entering into the contract he acts in good faith, as an agent assuming to contract for a principal must make a contract binding upon some principal, or else he himself is liable. In accordance with this rule it has been held that an agent is personally liable where he professes to enter into a contract on behalf of an unincorporated association, club or committee, or on behalf of a corporation, before its incorporation.'" I. W. Phillips & Co. v. Hall, 99 Fla. 1206, 128 So. 635, 637; see also, 3 C.J.S., Agency, § 213.

But, "On the other hand, if the contract is on behalf of the corporation and the person with whom the contract is made agrees to look to the corporation alone for responsibility, the promoters incur no

personal liability." 13 Am.Jur. 253, Corporations § 113. So, also, if the corporation after it comes into being ratifies the contract it is bound by it. Such ratification, it seems, will relate back to the inception of the contract. Smith v. Loftis, 112 Fla. 382, 150 So. 645. Cf. Greenfield Villages, Inc., v. Thompson, Fla., 44 So.2d 679, 681. We agree with the district judge that when the Referee prompted Mr. Ash to designate himself as a trustee, the Referee became aware, if he was not already aware, that Ash was not bidding for himself. The Receivers, by the receipt of one of them, recognized that such was the case. The corporate ratification was express and adequate.

■ The appellee leans heavily upon and the appellants seek to distinguish In re Childs Co., supra. There Irving Brodsky became the successful bidder at a bankruptcy sale. By the terms of the sale an initial deposit was payable and the execution of a contract was required for the balance to be paid at the times and in the amounts specified with a portion represented by an existing mortgage debt which was to be assumed. Instead of executing a formal contract in his own name, Brodsky tendered an agreement signed by his nominee. This contract was approved by the court. Brodsky claimed the title to the property purchased was defective and on his instructions the nominee repudiated the purchase and demanded a return of the deposit. The district court found the title objection to be frivolous, held Brodsky liable, and directed him to consummate his bid by taking title or causing his nominee to do so. The Court of Appeals for the Second Circuit reversed, holding that only the nominee was bound. We agree with the Receivers that much of the opinion in the Childs Co. case has no relation to the problem before us. However, it does furnish a precedent for the doctrine that an obligation incurred by a bid and its acceptance at a bankruptcy sale may under some circumstances be discharged by the liability being shifted to or assumed by another. Such doctrine we think is sound and its application here is proper.

If, therefore, the bid of Ash resulted in the incurring by him of personal liability upon the bid when it was made, such liability ceased when the corporate entity, for whom it was intended he should act, came into being and assumed the obligation.

We are in accord with the decision of the district court. The cross-appeal need not be considered. The order from which the appeal was taken is

Affirmed.