[No. 290-41172-2.    Division Two.    May 13, 1971.]

REFRIGERATION ENGINEERING CO., *Respondent*, v. DEAN MC-KAY *et al.*, *Appellants*, C. E. LOVELESS *et al.*, *Respondents and Cross-appellants.*

964

*Nelson Christensen* and *Douglas F. Albert,* for respondents McKay.

*Russell W. Newman* and *Joel E. Bradshaw,* for respondent Refrigeration Engineering Co.

*John E. Phillips* (of *Hillis, Phillips & Clark*), for respondents and cross-appellants Loveless et al.

Armstrong, J.—When experienced, successful and confident shopping center promoters get together to develop, build and operate a shopping center, failure of the venture is often not contemplated. Considering the expertise and the apparent financial stability of the men involved in the initial promotion and development of a proposed supermarket at 64th Street and Yakima Avenue in Tacoma, perhaps the most remarkable occurrence is that the venture did fail. The failure of this venture precipitated the present lawsuit.

The plaintiff, Refrigeration Engineering Company, contracted with Dean McKay, who was to develop and operate the grocery store portion of the center, to sell and install various fixtures and cooling equipment for the proposed grocery store. When the shopping center failed to material-

ize as expected and it became apparent that McKay would not perform the contract, Refrigeration Engineering Company sued the McKays to recover its expected profit of $32,467.49. The McKays then initiated a third party action against C. E. Loveless and his wife to recover their share of any damages that might be adjudged due to Refrigeration Engineering Company. Mr. Loveless was an experienced real estate developer who had promoted the construction and financing of the shopping center.

The trial court found that the contract was breached by McKay and awarded Refrigeration a judgment against the McKays for its expected profit and attorney fees. The McKays were awarded a judgment against the third party defendants, C. E. Loveless and his wife, for one-half of the plaintiff's total award on the theory that the McKays and the Lovelesses were partners or joint venturers in the development of the proposed center and therefore had to share the losses incurred in the venture.

In 1962, Loveless and Arctic Corporation, a "land holding" company wholly owned by Refrigeration, were equal shareholders in 64th and Yakima, Inc., a corporation formed for the express purpose of building a shopping center at 64th Street and Yakima Avenue in Tacoma, Washington. 64th and Yakima, Inc. bought the real property on which the proposed center was to be built. Through controlled corporations, Loveless and Refrigeration had collaborated in the development of other shopping centers.

Refrigeration had terminated its interest in 64th and Yakima, Inc. in 1963 through an escrow agreement with Loveless before McKay contracted with Refrigeration for the sale and installation of fixtures. By the terms of that agreement Refrigeration was to get back the money it had invested in 64th and Yakima, Inc. Refrigeration also obtained a commitment from Loveless that it would install the fixtures for the proposed supermarket. In return, Loveless was to become the sole shareholder of 64th and Yakima, Inc.

During the latter part of 1963, Loveless introduced

McKay to Refrigeration as a possible tenant for the proposed shopping center and as a customer for the contemplated sale of Refrigeration's fixtures. Dean McKay, a resident of Oregon, was an experienced owner and operator of supermarkets in Oregon, particularly grocery stores. Loveless and Dean McKay had various prior business dealings in Oregon and were shareholders in Dean's, Inc., which owned and operated several supermarkets in Oregon.

Loveless and McKay agreed that they would develop the proposed center, open it and operate it during the first few months, incorporate and split the stocks equally, then either continue to operate the center for a profit or sell their stocks in the newly formed corporation. This was essentially the same pattern followed in their prior business ventures in Oregon.

In this venture, Loveless was to be responsible for the financing, construction, and placing of tenants for the entire shopping center. McKay was to be responsible for the financing and placement of fixtures in the grocery store, upon which primarily depends the success of the center as a whole. He was then to operate the grocery store for a period of time. There was also a possibility that McKay would operate the drug store himself or find a manager to operate it for him.

On November 9, 1964, after further discussion among Refrigeration, McKay and Loveless, Refrigeration presented to McKay a document entitled "Proposal," a detailed document in which Refrigeration proposed to furnish and install certain fixtures. The document was signed by Dean McKay in a space labeled "Acceptance." The trial court correctly held, upon substantial evidence, that this "Proposal" became a binding contract when it was signed by Dean McKay.

Sometime after November 9, 1964, the development of the proposed center seemed to reach an impasse. Loveless was experiencing difficulties meeting the conditions required for obtaining the long term financing. At about the same time, Utah Wholesale Grocery Company, a large grocery supplier which had agreed to lease the premises,

became dissatisfied with the progress of the shopping center and stated it would cancel its lease of the proposed center. As a result of these developments, together with Loveless' inability to find tenants for other departments for the shopping center, the interim financing for the construction became impossible.

McKay expended less and less of his efforts on the development of the grocery store because of serious financial problems with his Oregon concerns. He could not decide whether or not he wanted to operate the drug store portion of the center. His efforts of finding another tenant to operate the drug store also proved unsuccessful. Refrigeration's officers testified that it became increasingly difficult to reach McKay for consultation as to further action.

■  On August 9, 1965, Refrigeration received a letter from Mr. Albert, an agent for McKay, which essentially was an offer to enter into a new contract. The court held that this letter was an anticipatory repudiation of the November 9, 1964 contract. That letter contained a positive statement to the promisee—Refrigeration—that McKay would not perform his contractual duties. Such a positive rejection justifies a finding that there was a breach of contract by anticipatory repudiation. *Regional Enterprises, Inc. v. Teachers Ins. & Annuity Ass'n of America*, 352 F.2d 768 (9th Cir. 1965); (the cited case involves the application of Washington law). After such repudiation of the contract, it was no longer necessary for the plaintiff to perform or tender performance. 4 A. Corbin, Contracts § 977 (1951).

McKay first argues that the proposal was not meant to be the final contract, but was dependent upon Refrigeration obtaining fixture financing for him. However, there was substantial evidence for the trial court to base its finding that Refrigeration fulfilled its obligation in obtaining the required fixture financing.

Furthermore, McKay argues that it was incumbent upon Refrigeration to submit an itemized cost breakdown of each fixture item before a binding contract came into existence. Refrigeration's officers, on the other hand, testified that

only a departmentalized cost breakdown of the various grocery store departments was required and that this was furnished by Refrigeration in its "Proposal." The trial court decided, upon substantial evidence, that Refrigeration had done all it was required to do with respect to the cost breakdown for the fixtures.

Even assuming that the letter of August 9, 1965 conclusively showed that McKay would not fulfill the terms of the fixture purchase contract, and would thereby constitute an anticipatory repudiation, McKay argues that a duty on his part to perform the contract never arose, because the completion of the shopping center building was a condition precedent to his contractual duty to perform. In essence, he argues that he is not liable for damages for breach of contract if there was never a duty upon him to perform the contract.

He therefore asks this court to reverse the trial court's finding that the successful completion of the building (at least to such a stage as to permit the installation of fixtures) was not an implied condition precedent to the duty of McKay to perform the equipment purchase contract, the failure or nonoccurrence of which would excuse such required performance.[1]

■ Our review of the record convinces us that such an implied condition was inherent in this type of contract. The

[1] Findings of fact 14 provides in part: "There was no condition discussed nor contemplated by the parties at any time prior to November 9, 1964, or subsequent thereto. All parties fully expected the entire venture to proceed to a successful conclusion and for the shopping center to be operated successfully. At no time prior to November 9, 1964 did anyone condition their performance in any manner whatsoever on the successful completion of this center, because no one anticipated that it would fail. Its ultimate failure was caused by conditions unknown and unanticipated by all parties hereto."

Findings of fact 16 provides: "Although Dean McKay and C. E. Loveless contended throughout trial that there were various conditions precedent and/or subsequent to the operation of the said contract, and particularly that the contract was not to be operative until completion of the said shopping center, no conditions to the contract, either express or implied, were contemplated by the plaintiff corporation, and the Court concludes that there were no conditions, precedent or subsequent, express or implied, to the said contract of November 9, 1964."

equipment was useless without a building in which it could be installed. Refrigeration's earlier involvement in promoting the development is virtually conclusive evidence of its knowledge and understanding that the shopping center was essential to the sale of its equipment. Its very purpose in initiating the project, together with Loveless, in order to "lock-in" the sale refutes its contention that no such condition was contemplated. The sale of the fixtures was not meant to be an isolated transaction which obligated McKay to buy the fixtures under any circumstance.

Refrigeration's president, Stanley Young, testified:

Q. But wasn't it understood by all parties that the building had to be completed?

A. I suppose it was.

. . .

Q. Until the building was ready for the installation of fixtures, there was no requirement for Mr. McKay to perform; isn't that correct?

A. That is correct.

Q. Nor was there any requirement for you to perform.

A. Right.

We conclude that the court's findings that the completion of the building was not an implied condition precedent to McKay's duty to perform the contract is not supported by substantial evidence.

■ However, even though the completion of the shopping center was an implied condition precedent to the promisor McKay's duty of performance, the failure or non-occurrence of the condition would not excuse the promisor's performance on the contract if the failure of such condition was due to the fault of the promisor. Restatement of Contracts § 295 (1932); *Highlands Plaza, Inc. v. Viking Inv. Corp.*, 72 Wn.2d 865, 435 P.2d 669 (1967); *Eggers v. General Refrigeration Co.*, 123 Mont. 205, 210 P.2d 636 (1949).

A statement of the rule found in 5 S. Williston, Contracts § 677 (3d ed. 1961) at 224, is applicable to this case:

It is a principle of fundamental justice that if a promisor is himself the cause of the failure of performance,

either of an obligation due him or of a condition upon which his own liability depends, he cannot take advantage of the failure.

In reflecting upon this jural proposition, a federal court has observed that "Where liability under a contract depends upon a condition precedent one cannot avoid his liability by making the performance of the condition precedent impossible, or by preventing it."

(Footnotes omitted.)

■ It was the trial court's express finding that the delays incurred in the construction of the building were the fault of Dean McKay and C. E. Loveless. Furthermore, the court found that the plaintiff, Refrigeration, was at all times ready and willing to perform its obligation under the contract.[2] These findings are supported by substantial evidence. An appellate court does not retry factual issues and our examination of the record, where a finding of fact is challenged, goes no further than to determine whether there is substantial evidence to sustain that finding. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959).

When through the fault of the promisor the occurrence or fulfillment of the condition precedent (*i.e.* the completion of the building) is prevented, and the condition would have been fulfilled except for the prevention on part of the promisor, then the performance of the condition is excused and the liability of the promisor McKay on the contract becomes absolute regardless of the failure to fulfill the condition. *Coastal Oil Co. v. Eastern Tankers Seaways*

---

[2]Findings of fact 17 provides: "Following the signing of the said contract, numerous delays were incurred in the construction of the said shopping center. Although the defendants and third party defendants blamed these delays on the plaintiff and accused the plaintiff of failure to supply plans and drawings to the architect of the shopping center, a preponderance of the evidence showed that the plaintiff was at all times ready, willing and able to perform its obligations under the contract and at all times kept the said architect properly advised. The said delays must be attributed to the failure of C. E. Loveless to obtain necessary financing and tenants for the project and to the failure of Dean McKay to decide whether or not he wanted to operate the drug store unit of the shopping center."

*Corp.,* 29 N.J. Super. 565, 103 A.2d 26 (1954); *see High-lands Plaza, Inc. v. Viking Inv. Corp., supra.* Therefore, the promisee, Refrigeration, was entitled to damages for the promisor's anticipatory repudiation of the contract regardless of the failure or nonoccurrence of the condition precedent.

McKay and Loveless argue, however, that the court's apparent inconsistent finding that the "ultimate failure [of the shopping center] was caused by conditions unknown and unanticipated by all parties" indicates that the trial court did not intend to impose the blame on McKay and Loveless for the failure to complete the building.

■ We have considered the court's oral decision in interpreting these apparently inconsistent findings. *Radosevich v. County Comm'rs,* 3 Wn. App. 602, 476 P.2d 705 (1970). That oral decision makes it clear that the trial court intended to place the fault for the failure to complete the building on McKay and Loveless. The court there stated that all parties initially were looking at the proposed development through "rose colored glasses" and did not intend its failure. We, therefore, choose to view that portion of findings of fact 14 in that context, rather than interpret it in such a way as to be inconsistent with the clear import of findings of fact 17.

After deciding that the trial court was correct in concluding that the "Proposal" was a binding contract which had been breached, we must decide who is liable for breach of the contract.

The trial court found that Dean McKay and his wife, as well as C. E. Loveless and his wife, were promoters and joint venturers in the development of the proposed shopping center, but particularly with respect to the grocery store. It therefore held the McKays liable for the full amount of the plaintiff Refrigeration's judgment, and in essence held that the McKays had the right to maintain an action against the Lovelesses as fellow promoters or joint venturers to recover contribution for the contract liabilities incurred by the McKays in promoting the venture.

C. E. Loveless, his wife, and Beverly McKay all assign error to the trial court's finding that they were promoters or joint venturers with Dean McKay.

Initially we will limit our analysis to whether C. E. Loveless was a promoter or joint venturer with Dean McKay and therefore can be held liable for contribution to Dean McKay on the fixture contract. Testimony was virtually undisputed as to the future plans of Loveless and McKay in the proposed development of the shopping center. The two were to combine their efforts and talents to develop a successful shopping center, they would then operate it during its initial opening, incorporate and divide the corporation stocks, then either continue to operate the center for a profit or else sell their stocks in the corporation. This was essentially the pattern followed by Loveless and McKay in their Oregon ventures. These facts constituted substantial evidence for the trial court to conclude that McKay and Loveless were the promoters of a contemplated corporation.

█ The general rule is that where a corporation is contemplated but has not yet been organized at the time when a promoter makes a contract for the benefit of the contemplated corporation, the promoter is personally liable on it, even though the contract will also benefit the future corporation. 18 Am. Jur. 2d *Corporations* § 127 (1965); *King Features Syndicate v. Courrier*, 241 Iowa 870, 43 N.W.2d 718, 41 A.L.R.2d 467 (1950). This rule clearly makes McKay liable on the contract as a promoter.

If two or more persons associate in the joint enterprise of promoting a corporation, and one of the promoters makes a contract which is within the scope of the promotion, all of them are liable on the contract. This is especially true where, as in our case, the fixture contract was directly authorized by the other promoter, C. E. Loveless. 18 Am. Jur. 2d *Corporations* § 128 (1965); *Ijams v. Andrews*, 151 F. 725 (7th Cir. 1907). Clearly, C. E. Loveless is liable on the contract, which was in furtherance of the promotion, as a promoter of the contemplated corporation regardless of

whether the promotional relationship is considered a joint venture or partnership.

■ Additionally, we find that the trial court was correct in holding that the relationship between Dean McKay and C. E. Loveless was a joint venture. Other courts throughout the country, as did the trial court, have had difficulty in defining the precise relationship between the promoters of a contemplated corporation. Some courts have defined this relationship as a partnership, others as one analogous to a partnership, and still others as a joint venture. *See* 18 Am. Jur. 2d *Corporations* § 135 (1965). However, it makes little difference in Washington what this relationship is designated, because the liabilities of partners and joint venturers are similar. *Barrington v. Murry,* 35 Wn.2d 744, 215 P.2d 433 (1950).

■ All of the essential elements of a joint venture are present in our case: (1) a contract, (2) a common purpose, (3) a community of interest, and (4) an equal right to a voice accompanied by an equal right of control. *Carboneau v. Peterson,* 1 Wn.2d 347, 95 P.2d 1043 (1939).

The relationship of a joint venture may be inferred from the facts of a case and the contract may either be express or implied. *Sevener v. Northwest Tractor & Equip. Corp.,* 41 Wn.2d 1, 247 P.2d 237 (1952). The testimony as to the parties' agreement to develop the center, incorporate, and split the stocks clearly was sufficient for the trial court to conclude that there existed an implied, if not an express agreement between McKay and Loveless as to this venture.

McKay and Loveless definitely had a common purpose and community of interest, which was to develop and operate a successful shopping center.

The fact that Dean McKay and C. E. Loveless had somewhat different functions in the development does not mean that the essential element of an equal right to a voice, accompanied by an equal right of control, is lacking. *Rosen v. E. C. Losch Co.,* 234 Cal. App. 2d 324, 44 Cal. Rptr. 377 (1965). McKay's function in the overall venture related to the installing and financing of fixtures in the grocery store

and to its initial operation. Loveless' function was to obtain financing for the construction of the center as a whole as well as the placing of tenants into the various stores. However, each function complemented the other and was a necessary and vital part in the development of the center as a whole. In such a complex transaction as this it is essential that the venturers entrust the performance of various functions to another. But the fact that they have different functions should not, by itself, lead to the conclusion that a joint venture is not established. *See* 46 Am. Jur. 2d *Joint Ventures* § 12 (1969).

Additionally, there must be a sharing of profits and losses in order for there to be a joint venture. *Knisely v. Burke Concrete Accessories, Inc.,* 2 Wn. App. 533, 468 P.2d 717 (1970). However, the parties need not *expressly* agree to share the losses. *Eagle Star Ins. Co. v. Bean,* 134 F.2d 755 (9th Cir. 1943); *see* 46 Am. Jur. 2d *Joint Ventures* § 13 (1969).

In our case there was an agreement between McKay and Loveless to share in the profits of the shopping center, either by operating it for a profit or by selling their shares in the contemplated corporation. Where the parties engage in a joint enterprise and there is an agreement to share profits, the law will presume that they agreed to share losses also. *Stipcich v. Marinovich,* 13 Wn.2d 155, 124 P.2d 215 (1942). If joint venturers wish to have a contrary agreement as to the sharing of losses, they can easily make an express agreement to that end.

The next issue is whether the trial court was correct in concluding that Mrs. Loveless and Mrs. McKay were promoters or joint venturers and therefore separately liable on the fixture contract signed by Dean McKay.

After a review of the record we are convinced that there was not substantial evidence to hold that Mrs. Loveless and Mrs. McKay were promoters or joint venturers in the development of the shopping center. The trial court assumed that because both signed the sublease for the contemplated grocery store from Utah Wholesale Grocery Company,

thereby becoming separately liable on that sublease, they were therefore promoters or joint venturers and also separately liable on the fixture contract signed only by Dean McKay. However, an analysis of the facts indicates that certain essential elements are lacking, without which there cannot be a finding that Mrs. Loveless and Mrs. McKay were promoters or joint venturers.

First, there is nothing in the record to indicate an agreement that the two wives would participate in the profits derived from the development and possible sale of the center as entities separate from their husbands. In fact, the agreement was that only Dean McKay and C. E. Loveless would divide the stocks or profits, as they had done in their previous Oregon ventures. Any benefits that the wives derived would be through their husbands, but not in their separate capacities. The absence of a mutual interest in the profits or benefits of a venture has been held to be conclusive evidence that a joint venture does not exist. *Frisch v. Svoboda*, 182 Neb. 825, 157 N.W.2d 774 (1968); *see Knisely v. Burke Concrete Accessories, Inc., supra.* We agree with this reasoning.

Secondly, there is no substantial evidence in the record to indicate that either wife had an equal right to a voice in this venture, accompanied by an equal right of control. They did not play an active role in the decision-making process in the development of the center, and there is nothing to indicate that their efforts, knowledge or skills were used in the development of the contemplated shopping center. One of the most essential elements without which there cannot be a joint venture, is the right of control or management of the property used in accomplishing the aims of the venture. *Carboneau v. Peterson, supra; Bainbrich v. Wells,* ............. Colo. App. ............., 476 P.2d 53 (1970). This essential element was lacking in our case.

Therefore, Mrs. McKay is not separately liable to Refrigeration on the fixture contract and Mrs. Loveless is not separately liable for contribution on Dean McKay's cause of action against the Lovelesses. The judgment against the

Loveless marital community, however, is affirmed. The McKays are residents of the state of Oregon and there is no evidence that they had acquired any property in the state of Washington as a marital community.

Judgment affirmed as modified.

PETRIE, C.J., and PEARSON, J., concur.

Petition for rehearing denied June 24, 1971.