355 A.2d 830

**RKO–STANLEY WARNER THEATRES, INC., a Delaware Corporation, Appellee,**

v.

**Ralph R. GRAZIANO.**

**Appeal of Jack JENOFSKY.**

Supreme Court of Pennsylvania.

Argued Nov. 20, 1975.

Decided April 7, 1976.

Rehearing Denied May 14, 1976.

Morton B. Wapner & Associates, Robert S. Dubin, Philadelphia, for appellant.

Wolf, Block, Schorr & Solis-Cohen, Franklin H. Spitzer, Philadelphia, for appellee.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

EAGEN, Justice.

On April 30, 1970, RKO–Stanley Warner Theatres, Inc., [RKO], as seller, entered into an agreement of sale with Jack Jenofsky and Ralph Graziano, as purchasers. This agreement contemplated the sale of the Kent Theatre, a parcel of improved commercial real estate located at Cumberland and Kensington Avenues in Philadelphia, for a total purchase price of $70,000.[1] Settlement was originally scheduled for September 30, 1970, and, at the request of Jenofsky and Graziano, continued twice, first to October 16, 1970 and then to October 21, 1970. However, Jenofsky and Graziano failed to complete settlement on the last scheduled date.

---

1. The purchase price of $70,000 was to be payable as follows: (1) $2,500 at or prior to the execution of the agreement; (2) $22,500 in cash or certified check upon delivery of the deed and (3) the execution and delivery by Jenofsky and Graziano to RKO of a purchase money mortgage in the principal sum of $45,000, with interest thereon at 8%.

Subsequently, on November 13, 1970, RKO filed a complaint in equity seeking judicial enforcement of the agreement of sale. Although Jenofsky, in his answer to the complaint,[2] denied personal liability for the performance of the agreement, the chancellor, after a hearing, entered a decree nisi granting the requested relief sought by RKO.[3] Exceptions to the decree of the chancellor were filed and dismissed by the court en banc which directed that the decree nisi be entered as a final decree. This appeal ensued.

At the time of the execution of this agreement, Jenofsky and Graziano were engaged in promoting the formation of a corporation to be known as Kent Enterprises, Inc. Reflecting these efforts, Paragraph 19 of the agreement, added by counsel for Jenofsky and Graziano, recited:

"It is understood by the parties hereto that it is the intention of the Purchaser to incorporate. Upon condition that such incorporation be completed by closing, all agreements, covenants, and warranties contained herein shall be construed to have been made between Seller and the resultant corporation and all documents shall reflect same."

In fact, Jenofsky and Graziano did file Articles of Incorporation for Kent Enterprises, Inc., with the State Corporation Bureau on October 9, 1971; twelve days prior to the scheduled settlement date. Jenofsky now contends the inclusion of Paragraph 19 in the agreement and the subsequent filing of incorporation papers, released him

---

**2.** Although Ralph Graziano was joined as a co-defendant with Jenofsky and did file an answer to the complaint of RKO, he did not appear at the hearing before the chancellor. In addition, he is not a party to this appeal. Equity's jurisdiction has never been challenged.

**3.** The chancellor ordered Jenofsky and Graziano to pay $22,500 to RKO and to execute and deliver to RKO their note and purchase money mortgage in the principal sum of $45,000 in accordance with the terms of the agreement.

from any personal liability resulting from the non-performance of the agreement.

■ The legal relationship of Jenofsky to Kent Enterprises, Inc., at the date of the execution of the agreement of sale was that of promoter. *Dintenfass, to use v. Wirkman,* 14 Pa.D. & C. 798, 799 (Phila.Com.Pl.1930). As such, he is subject to the general rule that a promoter, although he may assume to act on behalf of a projected corporation and not for himself, will be held personally liable on contracts made by him for the benefit of a corporation he intends to organize. *Frazier v. Ash,* 234 F.2d 320, 326 (5th Cir. 1956); *Stanley J. How and Associates, Inc. v. Boss,* 222 F.Supp. 936, 939 (S.D.Iowa 1963); *King Features Syndicate v. Courrier,* 241 Iowa 870, 43 N.W.2d 718 (1950). See also 41 A.L.R.2d 477 et seq.; 13 Am.Jur. 252 et seq., Corporations, § 113. This personal liability will continue even after the contemplated corporation is formed and has received the benefits of the contract, unless there is a novation or other agreement to release liability. *Dintenfass, to use v. Wirkman,* supra. 18 C.J.S. Corporations § 132.

■ The imposition of personal liability upon a promoter where that promoter has contracted on behalf of a corporation is based upon the principle that one who assumes to act for a nonexistent principal is himself liable on the contract in the absence of an agreement to the contrary. See 41 A.L.R.2d 477, 485. As stated in Comment (a) under Section 326 of the Restatement of Agency, Second: "there is an inference that a person intends to make a present contract with an existing person. If, therefore, the other party knows that there is no principal capable of entering into such a contract, there is a rebuttable inference that, although the contract is nominally in the name of the nonexistent person, the parties intend that the person signing as agent should be a party, unless there is some indication to the contrary." [4]

4. Although Comment (a) speaks in terms of a principal-agent relationship, it is clear that this proposition is also particularly ap-

█ However, even though a contract is executed by a promoter on behalf of a proposed corporation, where the person with whom the contract is made agrees to look to the corporation alone for responsibility, the promoter incurs no personal liability with respect to the contract. *Frazier v. Ash*, supra at 326, 327; 13 Am.Jur. 253, Corporations § 113; 18 C.J.S. Corporations § 132.

In *O'Rorke v. Geary*, 207 Pa. 240, 56 A. 541 (1903), wherein this Court affirmed on the basis of the opinion of the court below, there is set forth the three possible understandings that parties may have when an agreement is executed by a promoter on behalf of a proposed corporation. It is stated therein:

> "When a party is acting for a proposed corporation, he cannot, of course, bind it by anything he does, at the time, but he may (1) take on its behalf an offer from the other which, being accepted after the formation of the company, becomes a contract; (2) make a contract at the time binding himself, with the stipulation or understanding, that if a company is formed it will take his place and that then he shall be relieved of responsibility; or (3) bind himself personally without more and look to the proposed company, when formed, for indemnity."

*Id.* at 242, 56 A. at 542. See also *In re Collins Hosiery Mills*, 19 F.Supp. 500, 502 (E.D.Pa.1937).

Both RKO and Jenofsky concede the applicability of alternative No. 2 to the instant case. That is, they both recognize that Jenofsky (and Graziano) was to be initially personally responsible with this personal responsibility subsequently being released. Jenofsky contends the parties, by their inclusion of Paragraph 19 in the agreement, manifested an intention to release him from personal responsibility upon the mere formation of the pro-

plicable to promoters. Comment (b) of Section 32⟩ provides: "The classic illustration of the rule stated in this Section is the *promoter*." [Emphasis supplied.]

posed corporation, provided the incorporation was consummated prior to the scheduled closing date. However, while Paragraph 19 does make provision for recognition of the resultant corporation as to the closing documents, it makes no mention of any release of personal liability. Indeed, the entire agreement is silent as to the effect the formation of the projected corporation would have upon the personal liability of Jenofsky and Graziano. Because the agreement fails to provide expressly for the release of personal liability, it is, therefore, subject to more than one possible construction. Cf. *Frickert v. Deiter Bros. Fuel Co., Inc.*, 464 Pa. 596, 347 A.2d 701 (1975).

In *Consolidated Tile and Slate Co. v. Fox*, 410 Pa. 336, 339, 189 A.2d 228, 229 (1963), we stated that where an agreement is ambiguous and reasonably susceptible of two interpretations, "it must be construed most strongly against those who drew it." We further stated, "if the language of the contract is ambiguous and susceptible of two interpretations, one of which makes it fair, customary and such as prudent men would naturally execute, while the other makes it inequitable, unusual, or such as reasonable men would not likely enter into, the construction which makes it rational and probable must be preferred." Cf. *Frickert v. Deiter Bros. Fuel Co., Inc.*, supra. Instantly, the chancellor determined that the intent of the parties to the agreement was to hold Jenofsky personally responsible until such time as a corporate entity was formed and until such time as that corporate entity adopted the agreement. We believe this construction represents the only rational and prudent interpretation of the parties' intent.

■ As found by the court below, this agreement was entered into on the financial strength of Jenofsky and Graziano, alone as individuals. Therefore, it would have been illogical for RKO to have consented to the release of their personal liability upon the mere formation of a resultant corporation prior to closing. For it is a well-set-

tled rule that a contract made by a promoter, even though made for and in the name of a proposed corporation, in the absence of a subsequent adoption (either expressly or impliedly) by the corporation, will not be binding upon the corporation. See 18 C.J.S. Corporations § 118; *Zalewski v. Pennsylvania Rabbit Breeders Cooperative*, 76 Pa.D. & C. 225, 227 (Adams Com.Pl. 1950). If, as Jenofsky contends, the intent was to release personal responsibility upon the mere incorporation prior to closing, the effect of the agreement would have been to create the possibility that RKO, in the event of non-performance, would be able to hold no party accountable; there being no guarantee that the resultant corporation would ratify the agreement.[5] Without express language in the agreement indicating that such was the intention of the parties, we may not attribute this intention to them.

Therefore, we hold that the intent of the parties in entering into this agreement was to have Jenofsky and Graziano personally liable until such time as the intended corporation was formed and ratified the agreement.[6]

Decree affirmed. Costs on Jenofsky.

JONES, C. J., took no part in the consideration or decision of this case.

---

5.  In this regard, we note that there is no allegation by Jenofsky that Kent Enterprises, Inc., either expressly adopted or attempted to ratify the agreement entered into with RKO.

6.  We are buttressed in this conclusion by reference to alternative No. 2, set forth in *O'Rorke v. Geary*, supra, and conceded by both parties to represent their intentions herein. This alternative clearly envisions some affirmative action by the projected corporation before the release of the promoter's personal liability will be effected, i. e., "if a company is formed *it will take his place.*" [Emphasis supplied.] Similarly, Comment (b) under Section 326 of the Restatement of Agency, Second, provides that parties "may agree to a present contract by which the promoter is bound, but with an agreement that his liability terminates if the corporation is formed *and manifest its willingness to become a party.*" [Emphasis supplied.]

ROBERTS, J., filed a concurring opinion in which NIX, J., joined.

MANDERINO, J., filed a dissenting opinion.

ROBERTS, Justice (concurring).

Although I concur in the majority's result, I cannot join in most of its analysis. Well-settled principles of contract law support the chancellor's findings. Thus, there is no need for the majority's extended discussion of the doctrine of promoter's liability.

Appellee contracted to sell property to appellant. Appellant argues that a clause in the written agreement, which he drafted, relieves him of liability provided he forms a corporation before the closing date.* He claims this is so regardless whether the new corporation adopts the contract.

The agreement, as drafted, does not specifically address whether appellant is relieved of liability upon the mere formation of a new corporation. Rather, it is ambiguous because it is susceptible of two possible constructions. Under appellant's proposed construction, the contract allows him to avoid liability completely, leaving appellee no rights under the contract. As the majority correctly notes, it is unlikely that appellee agreed to such unreasonable terms.

When determining the intent of the parties to an ambiguous agreement, preference should be given to that construction which is both rational and probable. *Frickert v. Deiter Bros. Fuel Co., Inc.*, 464 Pa. 596, 602, 347 A.2d 701, 704 (1975); *Consolidated Tile & Slate Co. v. Fox*, 410 Pa. 336, 339, 189 A.2d 228, 229–30 (1963); see 3 Corbin on Contracts § 553 (2d ed. 1960); 4 Williston on Contracts, § 610B (3d ed. 1961). Additionally, an ambiguous clause in an agreement should be construed

---

* For full text of the disputed clause, see majority opinion, supra at 832.

against the interest of the drafting party: appellant. *Galligan v. Arovitch*, 421 Pa. 301, 303, 219 A.2d 463, 465 (1966); *Consolidated Tile & Slate Co. v. Fox*, supra, 410 Pa. at 339, 189 A.2d at 229; see Corbin, supra at § 559. Thus, the chancellor's finding that the parties agreed to hold appellant liable until such time as the new corporation adopted the agreement is fully supported in the record. I therefore concur in the majority's result.

NIX, J., joins in this concurring opinion.

MANDERINO, Justice (dissenting).

I dissent. Contrary to the majority's finding that the agreement was ambiguous because of its failure to provide expressly for the release of appellant Jenofsky from personal liability, I find clear on the face of paragraph 19 of the agreement an intention to release Jenofsky from personal liability upon the mere formation of the proposed corporation, provided the incorporation was completed prior to the scheduled closing date. According to paragraph 19, once the incorporation was completed, "all agreements . . . [would] be construed to have been made between the seller and the resultant corporation . . . ."

It is inconceivable to me how the majority can agree with the Chancellor's finding that Jenofsky was to be personally responsible until the new corporation in some way adopted the agreement. There is no language anywhere in the agreement to suggest such a far-fetched interpretation. Paragraph 19 clearly states that Jenofsky was to be released from personal liability as soon as the corporation was formed.

Nor is it our duty to decide the logic, or lack of logic, of the parties in entering into this agreement. This was not a contract of adhesion, and, just because we might not have entered into the same contract, we nevertheless cannot read beyond its clearly intended meaning. I would therefore reverse the decision of the court en banc.