[No. 9363–1–I.   Division One.   November 29, 1982.]

JOHN A. GOODMAN, *Respondent*, v. DARDEN, DOMAN & STAFFORD ASSOCIATES, ET AL, *Appellants*.

*James F. Hoover* and *Inslee, Best, Chapin & Doezie, P.S.,* for appellants.

*James L. Varnell,* for respondent.

DURHAM, A.C.J.—This is an appeal from an order that respondent John Goodman need not take part in arbitration proceedings arising out of a contract which he had signed as president of a corporation "in formation." Goodman had arranged with Darden, Doman & Stafford Associates (DDS), a general partnership, to renovate a Tacoma apartment building purchased by DDS. During the negotiations Goodman decided to incorporate and so informed DDS. The contract was ultimately executed between DDS and "BUILDING DESIGN AND DEVELOPMENT INC. (In formation), John A. Goodman, President." Work was to be completed by October 15, 1979; at that time it was not finished and was of allegedly poor quality. The corporate articles were filed on November 1, 1979, after the contract was in default.[1]

Between August 17, 1979 and December 12, 1979, DDS made five progress payments on the contract. The first check was made out to "Building Design & Developement [*sic*] Inc. John Goodman." Goodman struck out his name as payee and endorsed the check "Bldg Design & Dev. Inc. John A. Goodman, Pres." He instructed DDS to make further payments to Building Design & Development, Inc., and DDS did so on the last four checks.

After ineffective attempts to remedy the problems, DDS served Goodman with a demand for arbitration under the American Arbitration Association Construction Industry Arbitration Rules in May 1980. Goodman moved in King County Superior Court for a stay of arbitration and an order dismissing him from arbitration. The trial court

---

[1]The corporation was ultimately formed as "Building Renovation and Design Consultants, Inc."

found that he was not a party individually to the contract and, thus, not a proper party to the arbitration proceedings.

■ The dispositive issue in this case involves the liability of promoters on pre–incorporation contracts. In general, a promoter is liable on a contract he makes for the benefit of a not–yet–formed corporation. *Refrigeration Eng'g Co. v. McKay*, 4 Wn. App. 963, 972, 486 P.2d 304 (1971). The rule has been codified in RCW 23A.44.100:

> All persons who assume to act as a corporation without authority so to do shall be jointly and severally liable for all debts and liabilities incurred or arising as a result thereof.

*Heintze Corp. v. Northwest Tech–Manuals, Inc.*, 7 Wn. App. 759, 760, 502 P.2d 486 (1972). Clearly, a corporation not yet in existence cannot authorize actions on behalf of itself.

Nevertheless, promoters are not personally liable for pre–incorporation contracts where the other party knows of the nonexistence of the corporation and agrees to look solely to the corporation. *Heintze Corp. v. Northwest Tech–Manuals, Inc., supra* at 760–61. There is no dispute that DDS knew at the time of signing that the corporation was not yet in existence. The issue then is the specificity of the agreement to look solely to the corporation. Respondent argues that the agreement can be implied from conduct; appellant contends that the agreement must be express. This is a question of first impression in Washington.

As with any agreement, release of the promoter depends on the intent of the parties. Other jurisdictions present differing methods of determining intent. In Illinois, for example, the courts determine intent by looking to the contract and other contemporaneous documents. *Stap v. Chicago Aces Tennis Team, Inc.*, 63 Ill. App. 3d 23, 379 N.E.2d 1298, 20 Ill. Dec. 230 (1978); *H.F. Philipsborn & Co. v. Suson*, 59 Ill. 2d 465, 322 N.E.2d 45 (1974). *Stap* illustrates the problem with applying this approach in Washington. In *Stap,* the court found intent to release the promoter

because the contract was signed between the plaintiff and the promoter acting on behalf of a corporation to be formed. We do not believe, however, that the mere signing of a contract with a corporation "to be formed" suffices to show agreement to look solely to the corporation. Washington law presumes that a promoter who signs "on behalf" of an unformed corporation remains liable. *Refrigeration Eng'g Co. v. McKay, supra.* To say that contracting with a promoter in itself constitutes agreement to release him begs the question. The contract creates the presumed liability; something more is required to rebut the presumption and find release.[2]

Some jurisdictions require that the contract show clearly on its face that there is *no* intent to hold the promoter liable before he is released. *Vodopich v. Collier Cy. Developers, Inc.,* 319 So. 2d 43, 45 (Fla. Dist. Ct. App. 1975). The agreement must be "specific" or "express." *Malisewski v. Singer,* 123 Ariz. 195, 598 P.2d 1014 (Ct. App. 1979); *Spence v. Huffman,* 15 Ariz. App. 99, 486 P.2d 211 (1971). In *RKO–Stanley Warner Theatres, Inc. v. Graziano,* 467 Pa. 220, 223, 355 A.2d 830, 832 (1976), the contract stated:

> "It is understood by the parties hereto that it is the intention of the Purchaser to incorporate. Upon condition that such incorporation be completed by closing, all agreements, covenants, and warranties contained herein shall be construed to have been made between Seller and the resultant corporation and all documents shall reflect same."

The court held that "while [this paragraph] does make provision for recognition of the resultant corporation as to the closing documents, it makes no mention of any release of personal liability." 467 Pa. at 226. Since the paragraph

---

[2]The court in *Stap v. Chicago Aces Tennis Team, Inc.,* 63 Ill. App. 3d 23, 379 N.E.2d 1298, 20 Ill. Dec. 230 (1978) also ignores the fact that when the contract was signed, the corporation was not yet in existence. In Washington there is "'a strong inference that a person intends to make a present contract with an existing person.'" *White & Bollard, Inc. v. Goodenow,* 58 Wn.2d 180, 184, 361 P.2d 571 (1961), quoting Restatement (Second) of Agency § 326, comment *a* (1958). The approach in *Stap* necessarily finds intent to contract with a nonexistent entity.

did not expressly provide for release on closing, the court found it ambiguous and construed it to hold the promoter liable until the corporation actually ratified the contract.

We do not go so far as the court in *RKO–Stanley Warner Theatres*. The agreement need not say in so many words "I agree to release" before intent to do so may be discerned. Certainly intent is the controlling requirement; this must be proven as for any contract, express or implied. The burden is on the promoter, as proponent of the agreement, to show by a preponderance all essential facts, including mutual intent. *Johnson v. Nasi,* 50 Wn.2d 87, 309 P.2d 380 (1957); *Kellogg v. Gleeson,* 27 Wn.2d 501, 178 P.2d 969 (1947). Where the promoter cannot show an express agreement, existence of the agreement may be shown by circumstantial evidence, but circumstances must be such as to make it clear by a preponderance of the evidence that the parties not only intended, but actually did make, the alleged agreement. *Kellogg v. Gleeson, supra.*

The record here reveals insufficient evidence of agreement or mutual intent that could support a finding that John Goodman was released from liability. There is no evidence of an express contract, either written or oral. Goodman indicated his wish to limit liability by forming a corporation, but the most the record shows is that DDS did not object to his incorporating; nothing indicates assent to limit liability. Even if the expression of desire constituted an offer to make release a term of the contract, silence is acceptance only when there is a duty to speak. *American Aviation, Inc. v. Hinds,* 1 Wn. App. 959, 465 P.2d 676 (1970). DDS had no duty to correct, or even perceive, Goodman's mistaken interpretation of the promoter liability rules. The only other evidence of agreement lies in the progress payment checks which DDS made out to the corporation, at Goodman's request. This alone is insufficient to constitute intent to look solely to the corporation. *Wolfe v. Warfield,* 266 Md. 621, 296 A.2d 158 (1972).

We, therefore, hold that where a promoter wishes to be released from liability for contracts he makes on behalf of a

corporation not yet formed, he has the burden of proving the existence of an agreement to release him. The mere facts of contracting in the corporate name and payments made to the corporation are not sufficient to carry that burden. The trial court thus erred in finding that John Goodman was not a party to the renovation contract.

In light of this conclusion, we need not reach the issues of corporate disregard raised by appellant. The order excusing Goodman from arbitration proceedings is reversed and the case remanded for further proceedings.

CALLOW and SCHOLFIELD, JJ., concur.

Reconsideration denied January 13, 1983.

Review granted by Supreme Court March 29, 1983.